1  Frank S. Hedin (SBN 291289)
   **HEDIN LLP**
2  1395 Brickell Ave., Suite 610
   Miami, Florida 33131-3302
3  Telephone:   (305) 357-2107
   Email:       fhedin@hedinllp.com
4
   *Attorney for Plaintiff Kelsey Thayer*
5  *and the Putative Class*

6

7

8              **UNITED STATES DISTRICT COURT**
9            **NORTHERN DISTRICT OF CALIFORNIA**

10 | KELSEY THAYER, *individually and*
   | *on behalf of all others similarly situated,*
11 |                                              Civil Action No. _____
   |
12 |          Plaintiff,                          **COMPLAINT**
   | v.
13 |                                              **CLASS ACTION**
   | DOXIMITY, INC.,
14 |                                              **DEMAND FOR JURY TRIAL**
   |          Defendant.
15

16

17

18

19

20

On behalf of herself and all others similarly situated, Plaintiff Kelsey Thayer complains and alleges as follows based on personal knowledge as to herself, the investigation of her counsel, and information and belief as to all other matters, and demands trial by jury. Plaintiff believes that substantial evidentiary support will exist for the allegations in this complaint, after a reasonable opportunity for discovery.

### NATURE OF THE CASE

1. This case is about upholding the rights of hundreds of thousands of Americans who have never interacted with Defendant Doximity, Inc. but who have nonetheless had their names, identities, and other personally identifying information misappropriated and used by Defendant to advertise and promote its own products and services.

2. Defendant has built a lucrative business by misappropriating the names and identities of healthcare professionals across the United States. Defendant has created, published, and disseminated hundreds of thousands of profile pages, each one of which centers around the personal identity of one healthcare professional. On each profile page, Defendant uses the name, identity, and personally identifying information of that one healthcare professional to advertise its own products and services.

3.    To maximize the revenue it generates from its products and services, Defendant misappropriates the name and identity of nearly every healthcare professional whose personal information it has amassed in its database to advertise its own products and services—often without asking for, let alone obtaining consent from, any of those individuals.

4.    The California Right of Publicity Law ("CRPL") and common law right of publicity in California clearly prohibit what Defendant has done.

5.    As alleged herein, Defendant, from its corporate headquarters and principal place of business in San Francisco, California, has systematically and knowingly used Plaintiff Thayer's and hundreds of thousands of other Americans' names and identities for the purpose of advertising its services without those individuals' prior consent.

6.    Accordingly, Plaintiff Thayer brings this action, individually and on behalf of the proposed Class defined below, to redress and put a stop to Defendant's violations of the right of publicity.

**PARTIES**

7.    Defendant Doximity, Inc. ("Defendant") is a Delaware corporation that maintains its headquarters and principal place of business in San Francisco, California.    Defendant owns and operates the website Doximity.com (the "Website"), where it advertises and sells, from its headquarters and principal place

of business in San Francisco, California, products and services to persons throughout the United States.  Defendant is registered to do business in the state of California and may be served through its registered agent, CT Corporation System at  330 North Brand Boulevard, Glendale, California.

8.    Plaintiff Kelsey Thayer is a natural person and is a resident and citizen of Novato, California.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (i) at least one member of the putative class is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000 with respect to the putative class, exclusive of interest and costs, and (iii) there are at least 100 members of the putative class.

10.    Personal jurisdiction and venue are proper because Defendant maintains its corporate headquarters in San Francisco, California, which is within this judicial District.

## APPLICABLE STATUTORY AND COMMON LAW

### I.    California Right of Publicity Law

11.    Recognizing the need to protect its citizens' rights of publicity, the California legislature enacted the CRPL to establish a right to control the use of

one's name and likeness, among other identifying attributes, in commercial advertising.

12.     The CRPL prohibits companies like Defendant from, *inter alia*, using an individual's name or likeness, in any manner, to advertise or sell, or solicit purchases of, products or services.  Specifically, Section (a) of the CRPL states, in pertinent part:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a).

13.     The CRPL provides for, *inter alia*, statutory damages of $750.00 per violation, as well as recovery of any profits attributable to the unauthorized use of the person's name or likeness.  *See id.* § 3344(a).

14.     As explained below, Defendant disregarded its legal responsibilities to Plaintiff Thayer and hundreds of thousands of other individuals by using their names to advertise and promote its services—in direct violation of the CRPL.

## II.     California's Common Law Right of Publicity

15.     California also protects the right of publicity through a common law cause of action.

16.    Under California's common law, a claim for violation of publicity rights has four elements: (1) the defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.

17.    California's common law right of publicity protects not only against the unauthorized commercial use of an individual's name, voice, signature, photograph, and likeness, but also their identity more broadly.

18.    California's common law right of publicity may be enforced through an action for damages and/or injunctive relief.

19.    As explained below, Defendant disregarded its legal responsibilities to Plaintiff Thayer and many other healthcare professionals by using their names, identities, and other personally identifying information to advertise and promote its services, without any of their consent—in direct violation of the protections afforded by California's common law right of publicity.

## FACTUAL BACKGROUND

20.    As the operator of the "largest community of healthcare professionals in the country," Defendant has built a lucrative business centered around serving

advertisements and facilitating recruiting directed at the healthcare professionals who are members of its online platform.[1]

21.    Defendant has compiled a vast database of the names and personally identifying information of nearly all physicians, nurse practitioners, physician assistants, and pharmacists in the United States.

22.    According to Defendant, over 80% of U.S. doctors and 50% of all nurse practitioners and physician assistants are verified members of its online platform.[2]

23.    However, Defendant uses the names, identities, and personal details of *all* healthcare professional in its database to advertise its own products and services—even if they have never provided Defendant consent to do so.

24.    Defendant does this by publishing and disseminating hundreds of thousands of "profile pages" on the Website. Each profile page prominently features the name, identity, and personally identifying details of one healthcare professional and uses those names, identities, and personal details to advertise Defendant's own products and services.

---

[1] Doximity, "About Doximity," available at https://www.doximity.com/about/company.

[2] *Id.*

CLASS ACTION COMPLAINT

25.     Defendant has conducted these activities from its headquarters in San Francisco, California.    Defendant designed the Website and programmed and published the relevant profile pages from California.    Defendant further disseminated each of those profile pages in California.

## I.    Defendant's Products and Services

26.     Defendant operates a classic online "two-sided platform" business model through the Website.

27.     *First*, Defendant offers an online "medical professional network."[3]

28.     Defendant's "medical professional network" offered on the Website is often described as "LinkedIn for Doctors" or "Facebook for Doctors."[4]

29.     To utilize Defendant's "medical professional network," healthcare professionals can "claim" a "pre-populated Doximity professional profile" which

---

[3] Doximity, Inc., Form 10-K "Annual Report," May 20, 2025, page 3, available at https://investors.doximity.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=18485424.

[4] *See, e.g.*, Trung T. Phan, *The Hustle*, "The 'LinkedIn for Doctors' just went public and it's worth $10B" (June 29, 2021), available at https://thehustle.co/06292021-linkedin-for-doctors; *WHYY*, "Doximity: 'A secure Facebook for doctors'", (October 23, 2012), available at https://whyy.org/articles/doximity-a-secure-facebook-for-doctors/; *see also* Robert Chess & Ryan Kissick, *Stanford Business School*, "Doximity: Financing a Social Network for Physicians" (2016), available at https://www.gsb.stanford.edu/faculty-research/case-studies/doximity-financing-social-network-physicians.

Doximity has published on the Website using their name, identity, and personally identifying information.[5]

30.    Once a healthcare professional "claims" their profile, they gain access to various services offered by Defendant.  These services include a professional social network, a newsfeed, and workflow tools like secure messages, a telehealth platform, fax capabilities, and an e-signature tool.[6]

31.    *Second*, Defendant offers advertising and recruiting services which its business customers pay to access, including Defendant's "Marketing Solutions" and "Hiring Solutions."

32.    Defendant's Marketing Solutions and Hiring Solutions leverage the many users of its "medical professional network" to sell advertising and recruiting services to paying customers who wish to either (1) advertise to medical professionals via or (2) recruit and employ medical professionals.

33.    Defendant's Marketing Solutions is a "digital marketing platform for pharmaceutical manufacturers and health systems on a subscription basis to serve our members with tailored sponsored content that is highly relevant to their clinical

---

[5] Doximity, Inc., Form 10-K "Annual Report," May 20, 2025, page 4, available at https://investors.doximity.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=18485424.

[6] *Id.*

CLASS ACTION COMPLAINT

practices, including information about medications, clinical trials, guidelines and resources, and trends in medicine and patient care."

34.    As Defendant further explains, "Our [Marketing Solutions] customers are able to specify a combination of audience attributes, such as specialty, credential, and location, and also choose modules. . . Our sponsored modules can be categorized as Newsfeed, Workflow, and Peer. . ."[7]

35.    Paying customers of Defendant's Marketing Solution can choose to have their advertisements appear in users' Newsfeed, Workflow, or Peer interfaces, as Defendant notes:

- **Newsfeed.** Sponsored modules, such as videos and articles, that appear within our Newsfeed to generate awareness and build name recognition. The content of these modules may include updates on how certain drugs perform in clinical trials, formulary information, the opening of new hospitals or departments within a health system, or other information that is relevant to our members.

- **Workflow.** Sponsored modules, such as videos and articles, embedded within our workflow tools to engage physicians at key moments in

---

[7] Doximity, Inc., Form 10-K "Annual Report," May 20, 2025, page 6, available at https://investors.doximity.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=18485424.

their daily clinical practice. These placements create proximity to the point of care, fostering greater interactivity and relevance while enhancing brand awareness and recognition.

- **Peer.** Sponsored modules that appear directly within our members' messages, facilitating connections with thought leaders, department chairs, and experts across the Doximity network. These placements help foster professional relationships while enhancing visibility and engagement.[8]

36.  Defendant also offers Hiring Solutions to its paying customers, which include "health systems, medical recruiting firms, and other organizations that pay for subscriptions that provide them the ability to search and connect with medical professionals on Doximity."

37.  Defendant's Hiring Solutions "modules" consist of:

- **Job posts.** Individual job listings on our platform are posted either directly by health systems or by recruiting firms. Our members can search and browse these open job listings.

- **Direct message.** Recruiters, physicians, and administrators can directly message members who might be a good fit for an open

---

[8] *Id.*

position. These messages may or may not be for an opening that has been posted on our job posts.[9]

38.    As Defendant explains, "Both job posts and direct messages are sold as a subscription that entitles the customer to a certain number of job listings or messages on a self-serve basis throughout the subscription period."[10]

39.    In addition, Defendant sells "workflow products as enterprise-level solutions to health systems and hospitals," including a telehealth platform, a scheduling tool, and an AI writing assistant.[11]

40.    This business model has proven immensely lucrative for Defendant. For the fiscal year ended on March 31, 2025, Defendant reported $570.4 million in annual revenue and $227.8 million in net income.[12]

41.    Like many any other social media company that sells advertising or recruiting services, Defendant could not operate this highly profitable "two-sided"

---

[9] *Id.*

[10] *Id.* at 7.

[11] *Id.*

[12] *Id.* at 62.

CLASS ACTION COMPLAINT

platform business model without the many millions of users of its "medical professional network." [13]

## II. Defendant Uses Plaintiff Thayer's and the Putative Class Members' Names and Identities to Advertise Its Own Products and Services.

42.   Defendant has created, published, and disseminated hundreds of thousands of profile pages, each of which uses a different healthcare professionals' name, identity, and personally identifying information to advertise its own products and services.

43.   Defendant has neither requested nor obtained consent from many of the healthcare professional whose names, identities, and other personal details it misappropriates on these profile pages prior to publishing and disseminating them.

44.   Defendant publishes and disseminates the profile pages from its headquarters in California, and further disseminates those pages within California.

---

[13] *See, e.g.*, Sunil Gupta and Carl F. Mela, *Harvard Business Review,* "What Is a Free Customer Worth?" (Nov. 2008) ("Customers who pay little or nothing and are subsidized by another set of customers are essential to a vast array of businesses . . . According to one estimate, this business model accounts for a majority of the revenues of 60 of the world's 100 largest companies . . . The rationale for this approach, of course, is that by charging one set of customers little or nothing, the business will attract the critical mass of them required to draw in large numbers of another set of customers, and the income generated by the latter will handsomely exceed the cost of acquiring and serving the former.").

1

**A.    Plaintiff Kelsey Thayer's Profile Page**

2        45.    Plaintiff Kelsey Thayer is a physician assistant in Santa Rosa,

3    California.

4        46.    The profile page created by Defendant regarding Plaintiff Kelsey

5    Thayer ("Plaintiff Thayer's Profile Page") is representative of the hundreds of

6    thousands of similar such pages published on the Website.[14]

7        47.    Like the other profile pages created, published, and disseminated by

8    Defendant, Plaintiff Thayer's Profile Page uses her name, identity, and personally

9    identifying information to advertise Defendant's products and services.

10       48.    Plaintiff Thayer has never registered for Defendant's Website nor

11   provided Defendant consent to use her name or identity in any manner, much less

12   for the commercial purpose of advertising Defendant's products and services.

13       49.    An excerpt of Plaintiff Thayer's Profile Page is reproduced in the

14   screenshot below[15]:

15

16

17

18

19   [14] *See* Doximity, "Kelsey Thayer – Santa Rosa, CA – Plastic Surgery," available at
     https://www.doximity.com/pub/kelsey-thayer-pa.
20
     [15] *Id.*
21

- 14 -
CLASS ACTION COMPLAINT



50.    As shown above, Plaintiff's Thayer's Profile Page prominently displays her name, professional certification, practice area, work location, work address, and work phone number alongside statements and links advertising Defendant's products and services.

51.    Plaintiff's name and professional certifications are the most prominently-displayed text on the page—they appear in the largest font and near the top of the page.

52.    Below Plaintiff's practice area and work location, the page states: "Kelsey Thayer is a plastic surgery physician assistant in Santa Rosa, California."

53.     Immediately adjacent to Plaintiff Thayer's name and professional qualifications is a button which states: "Join to View Full Profile."

54.     When clicked, the "Join to View Full Profile" button leads to a separate page which states "Join over two million healthcare professionals on Doximity!" and encourages website users to "claim your profile"[16]:



55.     Plaintiff's Thayer's Profile Page also contains a prominent advertisement for Defendant's products and services against a light grey background.  That advertisement states:

---

[16] *See* Doximity, "Doximity –Sign Up – Search," available at
https://www.doximity.com/onboarding/registration/default/users/search.

**Join Doximity**

As a Doximity member you'll join over two million verified healthcare professionals in a private, secure network.

- Gain access to free telehealth tools, such as our "call shielding" and one-way patient texting.

- Connect with colleagues in the same hospital or clinic. You already have 3 invites waiting!

- Read the latest clinical news, personalized to your specialty.

56.    This advertisement concludes with a button stating "Join Doximity". When clicked, that button routes to the page stating "Join over two million healthcare professionals on Doximity!" and encouraging users to "claim your profile."[17]

57.    Plaintiff Thayer's Profile Page is a singular publication which uses Plaintiff Thayer's name and identity for the purpose of advertising and promoting Defendant's own products and services.

58.    Defendant's motive in publishing Plaintiff Thayer's Profile Page and the other profile pages was to use the respective healthcare professionals' names and identities to attract users to its Website, advertise its products and services, and thereby maximize its revenue and profits.

---

[17] *See* Doximity, "Doximity –Sign Up – Search," available at https://www.doximity.com/onboarding/registration/default/users/search.

59.    Defendant intentionally used Plaintiff Thayer's and hundreds of thousands of other healthcare professionals' names and identities to advertise its own products.  In fact, Defendant discloses to its investors that "the nature of our business exposes us to claims related to . . . rights of publicity and privacy."[18]

60.    Defendant never requested or obtained consent from Plaintiff Thayer to use her name, identity, or personally identifying information to advertise its own products and services.

### III.    Defendant Uses Plaintiff Thayer's and the Class Members' Names in Search Engine Optimization Techniques on Their Profile Pages to Advertise Its Own Products and Services

61.    Defendant further intentionally uses Plaintiff Thayer's name and the names of hundreds of thousands of other healthcare professionals in search engine optimization ("SEO") techniques built into the profile pages.

62.    Defendant uses these names in SEO techniques in order to trade on the commercial value associated with the names.  Defendant's goal is to attract internet users who are searching for the individuals' names to Defendants' advertisements for its own products and services appearing on the profile pages.

63.    Specifically, Defendant uses the names in this manner to ensure that the profile pages rank highly in search engine results whenever someone searches

---

[18] Doximity, Inc., Form 10-K "Annual Report," May 20, 2025, page 24, available at https://investors.doximity.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=18485424.

for the corresponding individual's name—and thereby more effectively advertise Defendant's own products and services.

64.    Defendant uses these names in following specific SEO techniques on each profile page:

- **Placing the healthcare professional's name in the page's URL.** For example, Plaintiff Thayer's name appears in the URL for Plaintiff Thayer's Profile Page[19]:

doximity.com/pub/kelsey-thayer-pa

- **Placing the healthcare professional's name the page's title.** For example, Plaintiff Thayer's name appears in the page title for Plaintiff Thayer's Profile Page, which is entitled "Kelsey Thayer – Santa Rosa, CA – Plastic Surgery"[20]:



Kelsey Thayer – Santa Rosa, ⓧ

---

[19] Doximity, "Kelsey Thayer – Santa Rosa, CA – Plastic Surgery," available at https://www.doximity.com/pub/kelsey-thayer-pa.

[20] *Id.*

This page title is reflected in the following line of Plaintiff Louw-DeFazio's Profile Page's html source code: `<title>Kelsey Thayer - Santa Rosa, CA | Plastic Surgery</title>`

- **Placing the healthcare professional's full name on the page multiple times.**  For example, Plaintiff Thayer's name appears on Plaintiff's Thayer's Profile Page three separate times.

- **Placing the healthcare professional's name in the page's headers.**  For example, Plaintiff Thayer's name appears in the first-level "header" on Plaintiff Thayer's Profile Page.[21]  This is reflected on the face of the page and in the following line of the page's source code: `<h1 class="profile-overview-heading profile-overview-user-name" data-sel-name="" itemprop="name"><span class="profile-overview-heading-segment profile-overview-user-name-first">Kelsey</span>   <span class="profile-overview-heading-segment profile-overview-user-name-middle">Nicole</span>   <span class="profile-overview-heading-segment profile-overview-user-name-last">Thayer`

---

[21] *See* Amelia Willson, Search Engine Journal, *How To Use Header Tags: SEO Best Practices* (May 31, 2024), available at https://www.searchenginejournal.com/on-page-seo/header-tags/.

- **Placing the healthcare professional's name in the meta 'description' tag of the page's source code.** A 'description' meta tag is a piece of code placed on a website which structures search engines' understanding of the content on the page. Defendant's use of healthcare professional' names in this technique ensures that search engines pick up the names when indexing pages and display the page in results generated in response to queries including the name.[22] The 'description' meta tag is reflected in the following line of the source code on Plaintiff Thayer's Profile Page:

  ```
  name="description"        property="og:description"
  /><meta                   content="https://doximity-
  res.cloudinary.com/images/f_auto,q_auto,t_public
  _profile_photo_320x320/profile-placeholder-
  unregistered-4/kelsey-thayer-santa-rosa-ca.jpg"
  ```

---

[22] *See, e.g.*, Google Search Central, "Meta Tags and Attributes that Google Supports," available at https://developers.google.com/search/docs/crawling-indexing/special-tags (explaining "meta tags are HTML tags used to provide additional information about a page to search engines and other clients.") (also stating with respect to the 'description' meta tag: "Use this tag to provide a short description of the page. In some situations, this description is used in the snippet shown in search results.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

- **Placing the healthcare professionals' in the file names of the images on the profile pages.**  Search engines read the file names of images embedded in webpages to contextualize images and facilitate page ranking in search engine results.[23]  Defendant automatically names the placeholder profile images on its unclaimed profile pages to include the corresponding healthcare professional's name and work location.  For example, the placeholder image on Plaintiff Thayer's Profile Page is entitled: `kelsey-thayer-santa-rosa-ca.jpg`.

- **Tagging images with the healthcare professional's name using Alt text.**  Alt text is a web development protocol which describes images for visually impaired users.  Web developers can also enhance the search engine rankings of their pages by inserting keywords into the Alt text descriptions of images on websites.[24]  Defendant tags placeholder images on each profile page with the corresponding healthcare professional's name, work location, and practice area using Alt text.  It does this even though the images on those unclaimed profile pages do

---

[23] *See, e.g.*, Eric Hochberger, *Mediavine*, "Image Filename SEO" (Oct. 12, 2020), available at https://www.mediavine.com/image-filename-seo/.

[24] Holly Cardew, *pixc*, "Mastering Alt Text Best Practices: Elevating SEO for Your Online Store" (July 1, 2024), available at https://pixc.com/blog/alt-text-best-practices/.

*not* picture the individual whose name is contained in the Alt test (instead, the images appear to be blurry versions of Leonardo DaVinci's Mona Lisa painting).  For example, the placeholder image on Plaintiff Thayer's Profile Page is described with the following Alt text:
`alt="Kelsey Thayer, Plastic Surgery, Santa Rosa, CA"`

- **Placing the healthcare professional's name in Schema.org descriptors.**  Including the healthcare professionals' names in Schema.org descriptors embedded in the pages' source code ensures that search engines recognize the names as names, and are able to calibrate search engine results accordingly.[25]  The Schema.org descriptors are reflected in the following line of the source code on Plaintiff                Thayer's                Profile                Page:
`{"@context":"https://schema.org","@type":"Profil ePage","dateCreated":"2023-07- 11T19:19:12.000Z","dateModified":"2025-11- 19T04:48:03.000Z","mainEntity":{"@type":"Person" ,"name":"Kelsey Thayer"`

---

[25] *See* Schema.org, *Getting started with schema.org using Microdata*, available at https://schema.org/docs/gs.html.  Schema.org descriptors are used solely for the purpose of improving the search engine optimization of a webpage.

- **Placing multiple variants of the healthcare professional's name on the page.** A website's use of common variants of a keyword phrase aids search engines in connecting different uses of that phrase to others (this is sometimes referred to as "keyword stemming" or "keyword phrase stemming").[26] For example, Plaintiff Thayer's Profile Page uses two different various of her name: "Kelsey Nicole Thayer" and "Kelsey Thayer."

65.    Defendant's use of these SEO techniques reflects an intentional choice by Defendant to hold out Plaintiff Thayer's name in search engines for the commercial purpose of trading on the value associated with her name.

66.    Defendant's use of Plaintiff Thayer's name in these SEO techniques is designed to attract internet users who are searching for her name to the advertisements published by Defendant for its own products and services on Plaintiff Thayer's Profile Page.

67.    Through each of these SEO techniques, Defendant intended to optimize the ranking of the profile pages in search engine results (e.g., in the results

---

[26] *See* Topic Ranker Blog, *Yes, SEO Keywords Can Be Phrases (12 Best Examples)* (Oct. 17, 2024) ("Don't limit yourself to exact match keywords. Search engines have evolved to understand the intent behind queries, so optimizing for related phrases and synonyms can help you capture a wider range of relevant traffic."); *see also id*. ("Weave your target keyword phrases naturally into important on-page elements such as page titles, headings (H1, H2, etc.), body copy, and meta descriptions.")

generated by a query on google.com) when any user searches for the name of any individual for whom Defendant has built a profile page.

68.    Defendant itself promotes the efficacy of its SEO techniques in using the names of the individuals for whom it has published profiles to make the profile pages rank highly in search engine results whenever someone searches for the corresponding healthcare professional's name, as shown in the following advertisement published by Defendant[27]:

---

[27] Doximity, "The Pediatrician's Guide to Using Doximity," available at https://7157e75ac0509b6a8f5c-5b19c577d01b9ccfe75d2f9e4b17ab55.ssl.cf1.rackcdn.com/JVXOTQRZ-PDF-1-481142-4445680347.pdf.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15



16    69.    Defendant could have easily prevented the free-preview profile pages

17  from appearing in search engine results by adding a "noindex" directive to the

18  pages' source code.[28]  Defendant chose not to.

19

20  [28] A "noindex" directive is a piece of code on the page that instructs search engines
21  not to index the page.  *See* Google Search Central, *Block Search indexing with*

70.    Indeed, Defendant chose to explicitly exclude 10 folders on the Website from being indexed—but Defendant did not exclude the profile pages from search engine indexing.

71.    Instead, Defendant did the opposite.  It included an explicit directive permitting search engines to access the profile pages.  This appears in the line of source code on the free-preview profile pages reading: `name="robots"`

72.    During the time period relevant to this action, numerous non-subscribers to Defendant's services performed searches on Google and other search engines that yielded results including hyperlinks to Plaintiff Thayer's Profile Page, along with summaries of the information available on the profile page in the search-engine results themselves (including Plaintiff's name and other personally identifying information).

73.    During the time period relevant to this action, numerous non-subscribers to Defendant's services visited Plaintiff Thayer's Profile Page by clicking on a link to such page in the results page of a search performed on Google or another search engine.

74.    During the time period relevant to this action, numerous non-subscribers to Defendant's services bore witness to the Defendant's use of Plaintiff

---

*noindex*, available at https://developers.google.com/search/docs/crawling-indexing/block-indexing.

Thayer's name on Plaintiff Thayer's Profile Page to advertise Defendants' products and services.

75.    Defendant tracks, *inter alia*, the number of times when (by date and time) and from where (by, *inter alia*, IP address) each of each profile pages is viewed by a non-subscriber, the location from which the visitor to the page originated (such as a Google search results page), and the total numbers of persons who have visited a particular profile page.

76.    Defendant continues to improve the coding of the profile pages to maximize their visibility to the consuming public in the results yielded by searches on Google and other popular search engines, and employ persons (and work with contractors) who focus specifically on these efforts.

## CLASS ACTION ALLEGATIONS

77.    Plaintiff Thayer's Profile Page is representative of the hundreds of thousands of profile pages published and disseminated by Defendant in and from Defendant's corporate headquarters in California.

78.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Thayer bring this action, on behalf of herself and members of the "Class" defined as follows:

> All natural persons residing in the United States for whom Defendant established a profile page on Doximity.com and who have not created an account on Doximity.com.

79.    Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants.  Also excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

80.    Plaintiff Thayer reserves the right to modify the definitions of the Class, including based on discovery and further investigation.

81.    The members of the Class are so numerous that their individual joinder herein is impracticable.  Plaintiff Thayer is informed and believes, and thereupon alleges, that the members of the Class number above one hundred thousand.  The precise number of members of the Class and their identities are unknown to Plaintiff at this time but will be readily determined in discovery, including by reference to Defendant's records.  Members of the Class may be notified of the pendency of this action by email, mail and/or publication through the records of Defendant.

82.    Plaintiff Thayer's claims are typical of the claims of the members of the Class she seeks to represent in that Plaintiff and all members of the Class were injured and sustained damages by Defendant's uniform wrongful conduct— namely, Defendant's practices of using Plaintiff's and the Class members' names, identities, and personally identifying information to advertise, sell, and promote, and to solicit sales of its products and services, without any of their consent.

1    83.    Common questions of law and fact exist as to all members of each of

2    the Class and predominate over questions affecting only individual members.  Legal

3    and factual questions common to the Class include, but are not limited to:

4        a.    Whether Defendant engaged in the alleged conduct;

5        b.    Whether Defendant knowingly used the names and personally

6           identifying information of the members of the Class;

7        c.    Whether Defendant used the Class members' names, identities, and

8           other personally identifying information for the purposes of

9           advertising goods or services;

10       d.    Whether Defendant had the Class members' consent to use their names

11          and personally identifying information in this way;

12       e.    Whether members of the Class are entitled to recover statutory

13          damages;

14       f.    Whether members of the Class are entitled to equitable relief,

15          including injunctive relief.

16   84.    Plaintiff Thayer is an adequate representative of the Class because

17   Plaintiff's interests do not conflict with the interests of the other members of the

18   Class she seeks to represent, she has retained competent counsel experienced in

19   prosecuting class actions, and she intends to prosecute this action vigorously.  The

20

21

1    interests of the members of the Class will be fairly and adequately protected by

2    Plaintiff Thayer and her counsel.

3        85.    The class mechanism is superior to other available means for the fair

4    and efficient adjudication of the claims of members of the Class.  Each individual

5    member of the Class may lack the resources to undergo the burden and expense of

6    individual prosecution of the complex and extensive litigation necessary to establish

7    Defendant's liability.  Individualized litigation increases the delay and expense to

8    all parties and multiplies the burden on the judicial system presented by the complex

9    legal and factual issues of this case.  Individualized litigation also presents a

10   potential for inconsistent or contradictory judgments.  In contrast, the class action

11   device presents far fewer management difficulties and provides the benefits of

12   single adjudication, economy of scale, and comprehensive supervision by a single

13   court on the issue of Defendant's liability.  Class treatment of the liability issues

14   will ensure that all claims and claimants are before this Court for consistent

15   adjudication of such issues.

16                    **FIRST CLAIM FOR RELIEF**
     **Violation of the California Right of Publicity Law, Cal. Civ. Code § 3344(a)**
17   **(By Plaintiff Thayer, Individually and On Behalf of the Class)**

18       86.    Plaintiff Thayer, individually and on behalf of the Class, repeats the

19   allegations contained in the foregoing paragraphs as if fully set forth herein.

20

21

87.    Defendant is a corporation and thus a juristic "person" within the meaning of the CRPL.   *See* Cal. Civ. Code § 3344(a)(1).

88.    During the time period relevant to this action, Defendant publicly used the name and other personally identifying attributes of Plaintiff and the Class members in the manner alleged herein, including by using such names, identities, other personally identifying information on profile pages to advertise Defendant's own products and services, including its healthcare professional network.

89.    Defendant's use of Plaintiff's and the Class members' names, identities, and personally identifying information on profile pages constitutes a "use" "for purposes of "advertising" "products, merchandise, goods, or services" within the meaning of the CRPL.  *See* Cal. Civ. Code § 3344(a)(1).

90.    Defendant's healthcare professional network constitutes "products, merchandise, goods, or services" within the meaning of the CRPL.  *See id.*

91.    Defendant coded, built, designed, and published the profile pages from its corporate headquarters in San Francisco, California.

92.    Defendant has published and disseminated the free-preview "profile" pages in California.

93.    Prior to using and holding out Plaintiff's and the Class members' names and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiff nor any member of the

1    Class that it would do so, and neither Plaintiff nor any member of the Class has ever

2    consented (in writing or otherwise) to Defendant doing so.

3        94.    By using Plaintiff's and the Class members' names, identities, and

4    other personally identifying information to advertise its products and services,

5    without their prior consent, Defendant infringed upon Plaintiff's and the Class

6    members' rights of publicity in violation of the CRPL.

7        95.    Plaintiff suffered mental anguish as a result of Defendant's

8    unauthorized uses of her name, identity, and other personally identifying

9    information in the manner alleged herein.  Upon learning that her name, identity,

10   and other personal details were being used by Defendant to sell its products and

11   services on the open market for its own financial gain, Plaintiff became worried,

12   frustrated, and concerned, disturbing her peace of mind in a meaningful way—just

13   as would occur to any reasonable person (including members of the Class) under

14   the same or similar circumstances.

15       96.    Significant commercial value exists in the aspects of Plaintiff's and the

16   other Class members' names and identities that Defendant used and continues to

17   use in the manner alleged herein.

18       97.    Defendant's use of Plaintiff's and the Class members' names,

19   identities, and other personally identifying information in profile pages was not

20   incidental.  On the contrary, it was instrumental (and continues to be instrumental)

21

to Defendant in obtaining users of its platform.  This is demonstrated by the sheer volume of profile pages published by Defendant on the Website.

98.    Defendant does not use Plaintiff Thayer's nor the Class members' names to identify or describe Defendant's own products or services.  Neither Plaintiff nor any member of the Class has ever registered for Defendant's Website, meaning that they are not a part of Defendant's healthcare professional network and cannot be contacted through Defendant's products or services.  Nor is any information about Plaintiff nor any member of the Class available for sale on Defendant's website.

99.    On behalf of herself and the Class, Plaintiff seeks: (1) an injunction requiring Defendant to obtain prior consent from the Cass members prior to the use of their names and identities to advertise products or services; (2) $750.00 in statutory liquidated damages to Plaintiff and each Class member; and (3) costs and reasonable attorneys' fees.  *See* Cal. Civ. Code § 3344(a)(1).

## SECOND CLAIM FOR RELIEF
### Violation of California's Common Law Right of Publicity
### (By Plaintiff Thayer, Individually and On Behalf of the Class)

100.   Plaintiff Thayer, individually and on behalf of the Class, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

1    101. Defendant used Plaintiff Thayer and the Class member's names,

2    identities, and other personally identifying details on profile pages advertising and

3    promoting Defendant's own products and services.

4    102. Defendant appropriated Plaintiff Thayer and the Class member's

5    names, identities, and other personally identifying details on those profile pages to

6    its own commercial advantage by using them to advertise its own products and

7    services, including its healthcare professional network.

8    103. Prior to using and appropriating Plaintiff's and the Class members'

9    names, identities, and other personally identifying information for advertising

10   purposes in the manner alleged herein, Defendant did not notify Plaintiff nor any

11   member of the Class that it would do so, and neither Plaintiff nor any member of

12   the Class ever consented (in writing or otherwise) to Defendant doing so.

13   104. Defendant's use and appropriation of Plaintiffs' and the Class

14   members' names and identities on the profile pages without their consent to

15   advertise Defendant's own products and services injured Plaintiff and the Class

16   members by depriving them of the commercial value associated with the use of their

17   names and identities for advertising purposes.

18   105. Defendant's use and appropriation of Plaintiffs' and the Class

19   members' names and identities on the profile pages without their consent to

20   advertise Defendant's own products and services further injured Plaintiff and the

21

Class members by causing them mental anguish, including worry, frustration, and concern in a meaningful way.

106.   Defendant coded, built, designed, and published the profile pages from its corporate headquarters in San Francisco, California.

107.   Defendant has published and disseminated the free-preview "profile" pages in California.

108.   By using Plaintiff's and the Class members' names, identities, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiff's and the Class members' California common law rights of publicity.

109.   Significant commercial value exists in the aspects of Plaintiff's and the other Class members' names and identities that Defendant used and continues to use in the manner alleged herein.

110.   Defendant's use of Plaintiff's and the Class members' names, identities, and other personally identifying information in profile pages was not incidental.   On the contrary, it was instrumental (and continues to be instrumental) to Defendant in obtaining users of its platform.   This is demonstrated by the sheer volume of profile pages published by Defendant on the Website.

111.   Defendant does not use Plaintiff Thayer's nor the Class members' names to identify or describe Defendant's own products or services.   Neither

Plaintiff nor any member of the Class has ever registered for Defendant's Website, meaning that they are not a part of Defendant's healthcare professional network and cannot be contacted through Defendant's products or services.   Nor is any information about Plaintiff nor any member of the Class available for sale on Defendant's website.

112.   On behalf of herself and the Class, Plaintiff seeks an injunction requiring Defendant to obtain prior consent from the Cass members prior to the use of their names and identities to advertise products or services.

### THIRD CLAIM FOR RELIEF
### Violation of California's Unfair Competition Law, Cal. Bus. & Prof. §§ 17200
### (By Plaintiff Thayer, Individually and On Behalf of the Class)

113.   Plaintiff Thayer, individually and on behalf of the Class, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

114.   California Business and Professions Code section 17200 et seq. ("UCL") prohibits "unlawful, unfair, or fraudulent business acts or practices."

115.   By selling misappropriating Plaintiff's and the Class members' names and identities without consent, as described above, Defendant has engaged in unlawful and unfair acts and practices prohibited by the UCL.

116.   Defendant's conduct is unlawful under the UCL because it violates California's common-law and statutory right of publicity, as discussed in the first and second causes of action.

117.   Defendant knowingly used and continues to use the names, identities, and other identifying information of the class members for the purpose of advertising its products and services.

118.   Defendant's misappropriation of Plaintiffs and the Class members' names, identities, and other identifying information was to the company's economic and commercial advantage.

119.   Defendant has generated millions of dollars of revenue from subscriptions to its products, which would be worthless without users of the platform Defendant advertising on the page misappropriating Plaintiffs' and the Class members' names, identities, and likenesses.

120.   At no time has Defendant affirmatively sought consent from Plaintiff or the Class members before misappropriating their names, identities, and personally identifying information for commercial purposes.

121.   Neither Plaintiff nor the Class members received any compensation for Defendant's commercial use of their names, identities, and other personal identifying information.

122.   Defendant's conduct also constitutes unfair business practices under the UCL because these practices offend established public policy and cause harm to the Plaintiff and the Class members, which cannot be reasonably avoided, and that outweighs any benefit to consumers or competition. The conduct also is

immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

123.   Plaintiff and the Class members have suffered economic injury as a result of Defendant's unlawful and unfair business practices.  But for its violation of law, Defendant would have either paid Plaintiff and the Class members for consent to use their names, identities, and other personally identifying information, or ceased its commercial use of those attributes.

124.   As a result of its unlawful and unfair business practices Defendant has reaped and continues to reap unfair and illegal profits at the expense of the plaintiffs and class members. Thus, Defendant should be required to disgorge its illegal profits, and to pay the plaintiffs and class members restitution in an amount according to proof at the time of trial.

125.   Plaintiffs Thayer's and the Class members' names, identities, and other personally identifying information is likely to remain in use by Defendant for the commercial purpose of advertising its own products and services, without their consent, and without compensation from Defendant without an injunction to prohibit that unlawful conduct.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
**(By Plaintiff Thayer, Individually and On Behalf of the Class)**

126.    Plaintiff repeats and incorporates by reference each preceding paragraph as if fully stated herein.

127.    Defendant has wrongfully and unlawfully used Plaintiff's and the Class members' names, identities, and other personal identifying information for the commercial purpose of advertising its own products and services without their consent for substantial profits.

128.    Plaintiff's and the Class members' names, identities, and personal information have conferred an economic benefit on Defendant.

129.    Defendant has been unjustly enriched at the expense of Plaintifff and the Class members, and the company has unjustly retained the benefits of its unlawful and wrongful conduct.

130.    It would be inequitable and unjust for Defendant to be permitted to retain any of the unlawful proceeds resulting from its unlawful and wrongful conduct.

131.    Plaintiff and the Class members accordingly are entitled to equitable relief including restitution and disgorgement of all revenues, earnings, and profits that Defendant obtained as a result of its unlawful and wrongful conduct.

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff seeks a judgment against Defendant, individually

3  and on behalf of the members of the Class, as follows:

4      A.    For an order certifying the Class pursuant to Federal Rule of Civil

5  Procedure 23 and naming Plaintiff Thayer as representatives of the Class and

6  Plaintiff's undersigned attorneys as counsel to represent the Class;

7      B.    For an order entering judgment in favor of Plaintiff and the members

8  of the Class on all claims for relief stated herein;

9      C.    For an order awarding Plaintiff and the members of the Class actual

10  damages, compensatory damages, punitive damages, statutory damages, and

11  statutory penalties, in the amounts set by statute or to be proven at trial;

12      D.    For an order for appropriate injunctive relief;

13      E.    For an order awarding pre- and post-judgment interest according to

14  law; and

15      F.    For an award of attorneys' fees, costs and expenses to Plaintiff's

16  counsel.

17

**DEMAND FOR JURY TRIAL**

18      Plaintiff, on behalf of herself and members of the Class, hereby demands a

19  trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims and

20  issues so triable.

21

CLASS ACTION COMPLAINT

1

2    Dated: February 9, 2026                Respectfully submitted,

3                                           By: /s/ *Frank S. Hedin*

4

5                                           **HEDIN LLP**

6                                           FRANK S. HEDIN
                                            1395 Brickell Ave, Suite 610
7                                           Miami, Florida 33131
                                            Telephone: (305) 357-2107
8                                           E-Mail: fhedin@hedinllp.com

9                                           *Counsel for Plaintiff and the Putative*
                                            *Classes*
10

11

12

13

14

15

16

17

18

19

20

21

CLASS ACTION COMPLAINT