J. Jonathan Hawk (SBN 254350)
jhawk@mcdermottlaw.com
Arianna R. Swazer (SBN 359884)
aswazer@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:    1 310 277 4110
Facsimile:    1 310 277 4730

Attorneys for Defendant DOXIMITY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KELSEY THAYER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOXIMITY, INC.<br><br>Defendant. | CASE NO. 3:26-cv-01206-TLT<br><br>**DEFENDANT DOXIMITY, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF 1) PURSUANT TO FED. R. CIV. P. 12(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Doximity, Inc.'s Request for Judicial Notice; [Proposed] Order]*<br><br>Date:          July 14, 2026<br>Time:          2:00 p.m.<br>Courtroom:  9 – 19th Floor<br>Judge:         Hon. Trina L. Thompson<br><br>Complaint Filed:    February 9, 2026 |

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that a hearing on Defendant Doximity, Inc.'s ("Doximity") Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) (the "Motion") will be held on July 14, 2026 at 2:00 p.m., or as soon thereafter as this matter can be heard, in Courtroom 9 – 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Judge Trina L. Thompson presiding. This Motion is made pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and is based on the ground that Plaintiff Kelsey Thayer's ("Plaintiff") Complaint in this matter fails to assert allegations sufficient to demonstrate standing under Article III of the U.S. Constitution ("Article III"). This is for several reasons.

*First*, the Complaint fails to plead injury-in-fact. There are no allegations that Plaintiff plausibly suffered economic loss. Nor are there sufficient allegations of emotional harm, where the Complaint is devoid of any assertions that could plausibly explain *how* Plaintiff in seeing limited, already-public business information about her could have suffered "mental anguish" as a result.

*Second*, the Complaint fails to plead traceability. Similar to what is mentioned above, the Complaint fails to plausibly tie Plaintiff's purported injury-in-fact to Doximity's at-issue conduct in publishing limited, already-public information about Plaintiff's job. The Complaint includes no allegations that could explain *how* Plaintiff in merely seeing limited information about her, which is already public, caused her to suffer any harm.

*Third*, the Complaint fails to plead redressability. The information at-issue here is already available publicly from third parties, and there is no allegation that the information is incorrect. To the extent the Complaint alleges that Plaintiff suffered any injury-in-fact (it does not), that harm would necessarily flow from all sources—beyond Doximity—where that information is published. It follows that an award of money damages or an injunction against Doximity would not redress the sources of Plaintiff's purported harm, as that harm would still continue from other sources that publicly publish the same information (and it is unclear if Plaintiff has pursued litigation against those publishers as well).

Doximity's Motion is supported by its Memorandum of Points and Authorities, its Request

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

for Judicial Notice ("RJN"), the pleadings and papers on file in this action, any matter that is judicially noticeable, and the arguments of the Parties at the hearing on Doximity's Motion.

Dated: April 10, 2026                    **MCDERMOTT WILL & SCHULTE LLP**


By: ___*/s/ J. Jonathan Hawk*_____
                J. Jonathan Hawk

Attorneys for Defendant DOXIMITY, INC.

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    QUESTION PRESENTED .......................................................................................3

III.   BACKGROUND ......................................................................................................3

IV.    ARGUMENT ...........................................................................................................5

      A.     The Complaint Fails to Sufficiently Plead Injury Under Article III ..................6

            1.     Economic Loss Theory: the Complaint Fails to Sufficiently Plead Concrete Economic Injury ......................................................................6

                  a.     No Alleged Endorsement of Doximity ......................................8

                  b.     No Loss of Opportunity to Endorse Third Parties ....................9

            2.     Emotional Distress Theory: the Complaint Fails to Sufficiently Plead Emotional Harm Sufficient to Establish Injury-in-Fact.......................10

      B.     The Complaint Fails to Sufficiently Plead that Any Theory Harm It Alleges Is Traceable to Doximity's Purported Conduct and Redressable ........................12

V.     CONCLUSION......................................................................................................13

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

Doximity's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)
Case No. 3:26-cv-01206-TLT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Am. Med. Coll. v. United States*,
217 F.3d 770 (9th Cir. 2000) ........................................................................................5

*Callahan v. Ancestry.com, Inc.*,
2021 WL 783524 (N.D. Cal. Mar. 1, 2021)............................................................. *passim*

*Cohen v. Facebook, Inc.*,
79 F Supp. 2d 1090 (N.D Cal 2011) .............................................................................11

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001).............................................................................10

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018) ........................................................................................6

*In re Facebook Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................................2, 6, 10

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ....................................................................7, 9, 10

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...............................................................12

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ............................................................................10

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D Cal 2022) .............................................................................11

*Low v. LinkedIn Corp.*,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ............................................................6, 10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..................................................................................................12, 13

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ........................................................................................5

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .............................................................................7

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........................................................................................6

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

*Sopcak v. N. Mountain Helicopter Serv.*,
    52 F.3d 817 (9th Cir. 1995) ............................................................................5

*Spindler v. Seamless Contacts, Inc.*,
    2022 WL 16985678 (N.D. Cal. 2022) ...........................................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...............................................................................5, 6, 11

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .....................................................................................10

**Statutes**

Cal. Bus. & Prof. Code Sec. 17200, *et seq.* ............................................................5

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

## I.    <u>INTRODUCTION</u>

The Complaint seeks to invoke this Court's jurisdiction based on the mere existence of an unclaimed profile on Doximity.com that publishes limited, accurate, information about Plaintiff's job that is already publicly available and obtained from third party sources. That information includes Plaintiff's name, job title as "plastic surgery physician assistant," address of the medical business where she works, and name of her graduate school. The Complaint's allegations, however, are insufficient as a matter of law to plead injury-in-fact, traceability, or redressability under Article III, where Article III standing at the pleading stage demands more than conclusory allegations of subjective dissatisfaction with the neutral publication of non-private facts.

The Complaint alleges that Doximity operates an online network for healthcare professionals through its website, Doximity.com. The Complaint alleges that, in efforts to facilitate participation in that online network, Doximity publishes pre-populated profiles for medical professionals. Those profiles are pre-populated using *information that is already publicly available from third-party sources* and is similar to information published about Plaintiff here, e.g., name, job title, and address of the business where someone may work. Medical professionals can claim their pre-populated profiles and register accounts with the Doximity network on Doximity.com for free, and, among other things, refine information in their profile that was pre-populated. If a medical professional claims a profile and registers with the Doximity network, that person, along with the rest of the *registered* account holders on the Doximity network, may receive advertising or recruiting messages from third parties that pay Doximity to be able to communicate with such *registered* users.

The Complaint alleges that Plaintiff has never been a registered member of the Doximity network. The Complaint also notably alleges that the pre-populated profile for Plaintiff makes clear to anyone viewing it that Plaintiff is *not* a registered member of the Doximity network. Nonetheless, there is no allegation in the Complaint that Plaintiff is a public or quasi-public figure, that the pre-populated profile implies that Plaintiff endorses Doximity or its network in any way, or that any information about Plaintiff contained in that profile is false, stigmatizing, or sensitive to her.

From this, the Complaint alleges two forms of purported injury to Plaintiff: that Doximity deprived Plaintiff of purported "commercial value" in her name and the limited business information

DOXIMITY'S MOTION TO DISMISS UNDER FED. R. CIV. P.
12(B)(1)
CASE NO. 3:26-CV-01206-TLT

displayed on Doximity.com; and, that she experienced "mental anguish" upon seeing her unclaimed profile. The Complaint's allegations underlying both types of purported injuries are insufficient as a matter of law to demonstrate standing under Article III at the pleading stage.

*First*, as to economic injury, the Complaint does not allege that Plaintiff's identity was used as an endorsement, that she lost any opportunity to market her endorsement, that Doximity displaced a commercially exploitable interest that she possessed, or that Doximity sold any of her data (or that of any other user, which it does not). The Complaint's economic injury theory rests entirely on speculation that Doximity "would have" paid Plaintiff under a hypothetical business model that is very different from what the Complaint alleges Doximity actually does to drive revenue, i.e., selling to third parties the ability to advertise and send recruiting messages to *registered* users. Courts, including in this district, have found that a complaint's economic-injury theory such as the one here cannot rest on allegations of a hypothetical business model, and have gone on to find that such complaints fail to plead Article III standing as a matter of law. *In re Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019).

The same should hold true here, where the Complaint's allegations show that its theory of economic injury relies on a hypothetical business model that is very different from what Doximity actually does to generate revenue. There is no cognizable economic loss pleaded in the Complaint, and any injury-in-fact would have to be premised on alleged emotional harm.

*Second*, as to emotional injury, the Complaint's allegations of Plaintiff suffering "mental anguish," "frustrat[ion]," and "concern[]" fare no better. The Complaint does not allege reputational harm, misleading implication, or exposure to stigma. The Complaint does not allege any information about Plaintiff displayed on Doximity.com was incorrect. The Complaint does not even allege *how* Plaintiff seeing that information could cause "mental anguish," concern, or frustration. The Complaint alleges merely, and in conclusory fashion, that Plaintiff suffered "mental anguish" from seeing her limited, already-public business information on Doximity.com.

In other words, the Complaint's theory of emotional harm challenges only the neutral display of accurate professional information that is widely available, and indeed obtained from, elsewhere. Such allegations amount to subjective disagreement with allegedly unconsented use. That is not, and

DOXIMITY'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1)
CASE NO. 3:26-CV-01206-TLT

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

cannot be, a concrete, traditionally recognized harm that Article III requires in order to plead standing. *Callahan v. Ancestry.com, Inc.*, 2021 WL 783524, at *4-5 (N.D. Cal. Mar. 1, 2021) ("*Callahan I*"); *Callahan v. Ancestry.com, Inc.*, 2021 WL 2433893, at *3-5 (N.D. Cal. June 15, 2021) ("*Callahan II*").

*Finally*, and for similar reasons, the Complaint fails to plead any facts that could establish Article III's requirements for traceability and redressability. There are no allegations in the Complaint that trace Doximity's purported publication of Plaintiff's limited business information to loss of economic opportunity or mental anguish by Plaintiff, as mentioned above. In the same vein, there are no allegations in the Complaint that could show how monetary or injunctive relief against Doximity could alleviate purported harm to Plaintiff where, as discussed above, the Complaint fails to allege any cognizable economic loss and fails to sufficiently plead any emotional harm.

Because the Complaint fails to allege any of the elements required to establish Article III standing at the pleading stage, this case does not belong in federal court. The Complaint should be dismissed in its entirety under Rule 12(b)(1).

## II.   QUESTION PRESENTED

Does the Complaint include allegations satisfying Plaintiff's burden of alleging a legally cognizable injury-in-fact that is fairly traceable to Doximity's purported commercial conduct and redressable for purposes of Article III standing?

## III.   BACKGROUND

As set forth more fully in Doximity's concurrently filed Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff alleges that Doximity is an online medical professional network of healthcare professionals designed to facilitate communication, networking, and connection. Compl., ¶ 27. The Complaint alleges that, through Doximity's platform, healthcare professionals can communicate with colleagues, build professional networks, and access career-related opportunities. *Id.*, ¶¶ 27-29.

To facilitate ease of access and enrollment for those who choose to register accounts, Doximity purportedly allows healthcare professionals to "claim" pre-populated profiles. *Id.*, ¶ 47. Pre-populated profiles contain publicly available, commercially accessible third-party information,

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys at Law
Los Angeles

such as a professional's name, job title, professional contact information, and educational history, which registered users can supplement, update, and refine as part of using the Doximity network for free. RJN, Ex. A at pp. 3-4. Doximity "publishes and disseminates [those] profile pages," and maintains a network of more than two million healthcare professionals who have registered profiles through Doximity.com to be part of the online "medical professional network." *Id.*; Compl., ¶ 43.

The Complaint further alleges that Doximity generates revenue by offering advertising and recruiting services to third-party business customers. *Id.*, ¶¶ 31-41. Specifically, the Complaint alleges those "business customers" pay Doximity to access tools that enable them to advertise to, or recruit from, Doximity's *registered* user base, i.e., medical professionals who, unlike Plaintiff, have claimed their pre-populated profile and registered to use the Doximity network for free. *Id.*; RJN, Ex. A at pp. 3-4. According to the Complaint, the appeal of Doximity's platform to business customers lies in the size and engagement of its community of *registered* healthcare professionals who have claimed profiles and *registered* accounts so that they can participate in the network. Compl*.*, ¶ 32. The Complaint notably does not allege that Doximity sells anyone's data, registered user or otherwise (which Doximity does not do).

Plaintiff is a plastic surgery physician assistant based in Santa Rosa, California. *Id.*, ¶ 45. The Complaint alleges that Doximity published an unclaimed, profile for Plaintiff displaying her name, job title, work location, and educational background, as pre-populated from third-party sources. *Id.*, ¶¶ 45–49. The Complaint does *not* allege that Plaintiff registered for Doximity, claimed the pre-populated profile, participated in the Doximity network, or that her profile was presented as belonging to a member of Doximity's platform. In fact, the Complaint acknowledges that Plaintiff has *never* registered to use the Doximity network. *Id.*, ¶ 48.

The Complaint alleges that upon discovering the existence of the pre-populated profile, Plaintiff experienced "mental anguish," including feeling "worried, frustrated, and concerned." *Id.*, ¶¶ 95, 105. The Complaint further alleges that Plaintiff was purportedly deprived of the "commercial value" of her name and professional information and asserts, in conclusory terms, that Doximity "would have either paid Plaintiff and the Class members for consent to use their names, identities, and other personally identifying information or ceased its commercial use of those attributes." *Id.*, ¶¶

DOXIMITY'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1)
CASE NO. 3:26-cv-01206-TLT

104, 123.

Based on these allegations, the Complaint asserts four causes of action, all premised on Doximity's alleged "use" of Plaintiff's name and professional information. *Id.*, ¶ 60. Plaintiff asserts: statutory and common law right of publicity claims (First and Second Claims for Relief); claims under the unlawful and unfair prongs of California's Unfair Competition Law (Third Claim for Relief); and a claim for unjust enrichment (Fourth Claim for Relief). *Id.*, ¶¶ 86–131. Plaintiff seeks, among other things, to represent a nationwide putative class of persons, defined as "[a]ll natural persons residing in the United States for whom Defendant established a profile page on Doximity.com and who have not created an account on Doximity.com," and seeks to recover $750 in statutory damages and attorney fees for each class member under Section 3344. *Id.*, ¶¶ 42, 78.

## IV.    ARGUMENT

A plaintiff's failure to include allegations in the operative complaint satisfying Article III standing requirements deprives the court of subject-matter jurisdiction and requires dismissal under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). The party invoking federal jurisdiction bears the burden of establishing standing. *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995); *Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000).

"[T]he irreducible constitutional minimum of [Article III] standing" contains three elements, namely, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Standing under Article III requires a complaint to allege a concrete injury even where statutory violations are asserted. *Id.* at 341. Allegations of abstract injury, hypothetical loss, or bare statutory violations untethered to real-world harm are insufficient. *Id.*

A motion to dismiss brought under Rule 12(b)(1) for lack of Article III standing may raise either a facial or factual challenge to jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial challenge asserts that the allegations in the complaint, taken as true,

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

are insufficient to establish subject-matter jurisdiction.

Here, Doximity raises a facial challenge to the Complaint's standing allegations and, to survive this motion, allegations of actual injury, traceability, and redressability must be both plausible and causally linked to the unlawful practice at issue. *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018). The Complaint's allegations, however, do not satisfy Article III's standing requirements for several reasons, and the Complaint should be dismissed.

### A.      The Complaint Fails to Sufficiently Plead Injury Under Article III

The Complaint fails to allege that Plaintiff suffered any injury-in-fact sufficient to confer Article III standing. As discussed in greater detail below, Plaintiff's purported injuries as alleged in the Complaint are comprised of speculative economic loss and conclusory emotional harm. Those purported injuries as pleaded are implausible and/or not plausibly connected to Doximity's conduct.

### 1.      Economic Loss Theory: the Complaint Fails to Sufficiently Plead Concrete Economic Injury

The Complaint's theory of economic injury rests on its allegation that Doximity deprived Plaintiff of "the commercial value associated with the use of [her] name and identity for advertising purposes." Compl. ¶¶ 104, 123. That allegation is insufficient to establish Article III injury-in-fact. It does not plausibly allege that Plaintiff lost, was excluded from, or was otherwise deprived of any commercially exploitable use of her name or identity. *Callahan I*, 2021 WL 783524, at *4-5.

Indeed, to sufficiently plead economic injury to demonstrate standing under Article III, a complaint must allege not merely that a defendant benefited commercially from the challenged conduct, but that the plaintiff suffered a concrete deprivation of property. *Spokeo, Inc.*, 578 U.S. at 341; *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *3–5 (N.D. Cal. Nov. 11, 2011). Courts analyzing this requirement repeatedly emphasize that the injury-in-fact inquiry turns on whether the plaintiff plausibly alleges loss of something of value that she herself possessed or could exploit. It does *not* turn on whether the defendant obtained some abstract or incidental commercial advantage. *In re Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 784.

This distinction is underscored by decisions where courts in this district found that complaints at the pleading stage did sufficiently allege economic injury-in-fact for purposes of Article III

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

standing. *See*, *e.g.*, *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014). In those cases, the plaintiffs alleged that the defendants used their names and likenesses to direct messages to third parties. *Id.* Specifically, the plaintiffs in those cases were registered users of the defendants' respective platforms, and their complaints alleged that the defendant platform providers harvested information from the plaintiffs as registered users to, in turn, display messages to third parties that implied the plaintiffs, by function of being registered users, endorsed the defendants' products and/or services. *See Fraley*, 830 F. Supp. 2d at 797-800; *Perkins*, 53 F. Supp. 3d at 1206-09.

The injury-in-fact pleaded in those complaints arose because the plaintiffs' identities were deployed as persuasive signals to others, i.e., to friends, connections, and network members, as part of the defendants encouraging those third parties to likewise register for the defendants' respective platforms based on the plaintiffs purportedly endorsing them. *Id.* The courts analyzing motions to dismiss in those matters where the defendants challenged, among other things, the plaintiffs' Article III standing, found that the complaints sufficiently alleged that the defendants appropriated the plaintiffs' abilities to control or monetize the endorsement value of their respective identities. *Id.* It was such an alleged outward-facing endorsement by registered users, directed at third parties, that created a concrete economic interest of which plaintiffs were plausibly deprived. *Id.*

In other words, if those plaintiffs were going to endorse anything, they should be able to benefit from the economic value of their endorsements. As the *Fraley* court in particular recognized, the alleged "endorsement" had value, where a "user's personal endorsement of the product [] was … 'the Holy Grail of advertising.'" *Fraley*, 830 F. Supp. 2d at 799.

In sharp contrast to the allegations in *Fraley* and *Perkins*, at least one court in this district has found that a different complaint failed to satisfy the pleading standard under Article III where there was no alleged endorsement, and thus no loss of potential earnings, by the plaintiff. *Callahan I*, 2021 WL 783524, at *4-5 (distinguishing *Fraley* and *Perkins* based on the allegations of endorsements in the complaints in those cases). This was particularly true where the defendant there, Ancestry.com, merely included the plaintiff's "pictures and information [] in the Ancestry Yearbook database," including "name, photograph, school name, yearbook year, and city or town." *Id.* at *1. The court in

McDermott Will & Schulte LLP
Attorneys at Law
Los Angeles

*Callahan I* recognized that it was not sufficient for the complaint to "point to the dollars in a defendant's pocket; [the plaintiff] must sufficiently allege that in the process he lost dollars of his own." *Id.* at \*4-5 (citing *In re Google, Inc. Priv. Policy Litig.*, 2013 WL 6248499, at \*5 (N.D. Cal. Dec. 3, 2013)); *Callahan II*, 2021 WL 2433893, at \*4–5 (same, dismissing amended complaint).

Similarly in *Callahan I*, the plaintiffs asserted—as the Complaint does here—a statutory claim for misappropriation of name and likeness. The *Callahan I* court went on to find that, in connection with a claim under Section 3344, a complaint fails to sufficiently plead Article III standing where it merely alleges that the plaintiffs lost control over their likenesses. *Id.* Section 3344 "imposes liability only where 'persons are injured as a result," and a bare assertion of loss of control over one's likeness is not injury-in-fact in that context. *Id.* (noting that Section 3344 is "different from cases involving statutes that establish liability for a statutory violation alone"). Without more, there is nothing to show that merely loss of control over one's likeness constitutes a loss of something of value under Article III.

Under this body of case law and as relevant here, it emerges that there are two potential bases for finding that a complaint sufficiently pleads economic loss under Article III: (a) that the defendant used the plaintiff's information to convey a message that the plaintiff endorses the defendant or its services, thus potentially costing the plaintiff compensation for the value of that "endorsement;" or, (b) that the defendant's use of the plaintiff's information cost the plaintiff opportunity to endorse a third party or its services, thus impairing the ability of the plaintiff to sell her endorsement to others.

Neither of those bases for economic loss are sufficiently pleaded in the Complaint.

### a.　No Alleged Endorsement of Doximity

As discussed above, the Complaint here does *not* allege that Doximity used Plaintiff's name or identity as an endorsement to persuade or influence any third party to use or pay for the Doximity network. The Complaint does *not* allege that Doximity used Plaintiff's name as a testimonial, that Plaintiff was held out as a member of the Doximity network, or that anyone was induced to register an account with or pay Doximity because of the pre-populated profile with limited, publicly-available business information about Plaintiff's job.

It is also notable that the Complaint acknowledges the purpose of the pre-populated profile is

Doximity's Motion to Dismiss Under Fed. R. Civ. P.
12(b)(1)
Case No. 3:26-cv-01206-TLT

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

for Plaintiff to potentially "claim" it and become a registered user of the Doximity network. Compl. ¶ 56. In other words, any call-to-action is directed to Plaintiff herself, informing her, "you already have 3 invites waiting!" *Id.* at ¶ 55. Using a person's name to address that person, or to facilitate that person's own access to a service, does not constitute use of that person's identity as a commercial signal to anyone else, and therefore does not deprive the plaintiff of endorsement or publicity value. *Callahan I*, 2021 WL 783524, at *4-5; *compare Fraley*, 830 F. Supp. 2d at 799.

It seems that the Complaint is attempting to draw the inference that any use of someone's name or likeness automatically implies an endorsement. But that inference is not supported by the Complaint's specific factual allegations. It is also not the law that mere use of someone's name implies any measure of endorsement. And to find otherwise would be to incorrectly construe the Complaint's claims as granting Plaintiff *de facto* right of censorship to people to suppress any and all uses of her name and likeness.

Put simply, Plaintiff is not held out as endorsing Doximity. Nothing in the Complaint can be construed otherwise. That alone undermines any economic loss theory to demonstrate standing under Article III, to the extent that Plaintiff believes she should have been paid for the use of her limited, publicly-available business information.

### b.    No Loss of Opportunity to Endorse Third Parties

In a similar vein, the Complaint also does not plausibly allege that Plaintiff was precluded from exploiting her name or identity elsewhere, i.e., in favor of some third party other than Doximity. The Complaint does not allege that Doximity somehow restricted Plaintiff's use of her identity, diminished the marketability of her name, or interfered with any licensing opportunity. At most, the Complaint asserts, in conclusory form, that Doximity "would have" paid Plaintiff for her consent under a hypothetical business model where Doximity drives revenue based on non-registered users. Compl., ¶ 123.

That is *not* Doximity's business model according to the Complaint's own allegations, and speculative, conclusory assertions that a defendant "would have" or "should have" compensated a plaintiff do not constitute concrete economic injury under Article III. This is particularly true when those assertions are unsupported by specific allegations that the plaintiff sought, possessed, or lost

DOXIMITY'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1)
CASE NO. 3:26-CV-01206-TLT

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

the ability to monetize her identity. *Low*, 2011 WL 5509848, at *4-5; *In re Facebook Consumer Privacy*, 402 F. Supp. 3d at 784; *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("It strains credulity to believe that…Torch would have gone to each individual JetBlue passenger and compensated him or her for access to his or her personal information."); *see also Fraley*, 830 F. Supp. 2d at 799 (distinguishing *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001), and *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005), where plaintiffs "were unable to articulate how they were economically injured by the use of their own information to advertise to themselves").

These are the circumstances here, where the Complaint baldly alleges that Plaintiff should have been paid, despite Doximity's business model not generating revenue from persons who are not registered to use its network. The Complaint's allegations are woefully insufficient to demonstrate Article III standing at the pleading stage under an economic loss theory based on a pre-populated profile comprised of Plaintiff's limited business information that is publicly available from third parties anyway. The Complaint should be dismissed under Rule 12(b)(1) for these reasons.

### 2. Emotional Distress Theory: the Complaint Fails to Sufficiently Plead Emotional Harm Sufficient to Establish Injury-in-Fact

As a seemingly separate basis for attempting to establish purported injury-in-fact under Article III, the Complaint also alleges that Plaintiff suffered "mental anguish," asserting that Plaintiff felt "worried, frustrated, and concerned" upon discovering an unclaimed profile on Doximity.com with her limited business information. Compl., ¶¶ 95, 105. Those allegations, however, are insufficient to establish a concrete injury-in-fact under Article III for emotional harm.

To be sure, courts recognize that emotional or dignitary harm may satisfy Article III under the appropriate circumstances. But standing requires more than the incantation of subjective discomfort. The alleged harm must be plausibly tied to conduct that has a "close relationship" to traditionally recognized privacy or reputational injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021); *Spokeo, Inc.*, 578 U.S. at 341. Conclusory assertions of "hurt feelings," untethered to allegations explaining how the challenged conduct would reasonably cause distress, are insufficient. *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011).

DOXIMITY'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1)
CASE NO. 3:26-CV-01206-TLT

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

In this regard, courts in this district have distinguished between cases in which the use of a plaintiff's identity plausibly invades personal dignity, peace of mind, or reputation, on the one hand, and cases in which a plaintiff alleges only subjective dissatisfaction with the neutral display of publicly available information, on the other. In *Callahan II*, for example, the court found that the complaint failed to sufficiently plead Article III standing under an emotional harm theory where plaintiffs baldly alleged "mental anguish" based solely on the use of their names and likenesses in public profile pages used to solicit subscribers. The *Callahan II* court held that such allegations—absent stigma, misleading implication, or reputational harm—did *not* constitute a concrete injury. 2021 WL 2433893, at *4–5.

By contrast, courts have found that very different allegations of emotional harm were sufficient to plead injury-in-fact under Article III where the complaints plausibly explained *how* the challenged conduct caused the purported emotional harm. *See, e.g., Spindler v. Seamless Contacts, Inc.*, 2022 WL 16985678, at *3–4 (N.D. Cal. 2022) (plaintiff's identity allegedly used to market a directory to salespersons); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 890 (N.D. Cal. 2022) (defendant's use of "teaser" profiles implied the plaintiff was involved in criminal or other unsavory activities). In those cases, factual allegations explained why a reasonable person in the plaintiff's position would experience distress, and focused on that challenged conduct potentially exposing the plaintiff to reputational risk, misleading information about the plaintiff's associations with others, or uncertainty about how their identity was being presented to the public.

This case bears none of those hallmarks. The Complaint does not allege that Plaintiff's pre-populated profile conveys endorsement or affiliation with Doximity, that it implies that Plaintiff is engaged in criminal conduct or other stigmatizing activities, or that it discloses private or sensitive information about Plaintiff. The Complaint does not allege that Doximity sells anyone's data. Nor does the Complaint allege that the profile containing Plaintiff's limited business information portrays her inaccurately or exposes her to ridicule, stigma, or reputational harm.

The Complaint instead alleges that Doximity displays limited, accurate professional information about Plaintiff, such as her name, job title in the medical profession, location, and educational background, which information is already publicly available from third parties. Compl.

DOXIMITY'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1)
CASE NO. 3:26-CV-01206-TLT

¶¶ 45–49. Under these circumstances, the Complaint's bare assertion that Plaintiff felt concerned or frustrated in seeing that information amounts to Plaintiff's subjective disagreement with an unconsented but neutral use of public information, not a concrete emotional injury that is cognizable under Article III.

The Complaint's bare allegations of "mental anguish" are simply insufficient.

**B.     The Complaint Fails to Sufficiently Plead that Any Theory of Harm It Alleges Is Traceable to Doximity's Purported Conduct and Redressable**

To establish standing under Article III, the Complaint must plead that the Plaintiff's alleged harm is fairly traceable to Doximity's challenged conduct and that it is likely to be redressed by the relief sought. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Even assuming *arguendo* that the Complaint plausibly alleges a concrete injury-in-fact under Article III (it does not), the Complaint independently fails to satisfy Article III's traceability and redressability requirements.

First, the Complaint does not plausibly allege traceability. Plaintiff attributes her asserted emotional distress to the existence of an unclaimed profile displaying limited, accurate professional information about her. But the Complaint does *not* allege that Doximity: added or implied anything misleading in connection with that profile; disclosed sensitive information; or otherwise did anything distinct to cause Plaintiff's alleged worry or frustration. The Complaint also does *not* allege that there is something specific about the publication of her limited business information on Doximity—as opposed to other publicly available sources—that caused her purported mental harm. Rather, the allegations in the Complaint are not limited to *where* Plaintiff's limited business information is published, and it appears that Plaintiff's alleged emotional harm flows from the general availability of her information anywhere it appears.

In that regard, her harm does not stem from anything specific that Doximity did, and traceability is lacking under Article III. *See In re iPhone Application Litig.*, 2011 WL 4403963, at *6 (N.D. Cal. Sept. 20, 2011) (finding no standing where plaintiffs' asserted injuries were not "fairly traceable" to Apple's conduct rather than to the actions of multiple independent third parties).

Second, the Complaint fails to plead redressability under Article III. The Complaint seeks statutory damages and injunctive relief, but it does not explain how such relief would meaningfully

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

DOXIMITY'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1)
CASE NO. 3:26-CV-01206-TLT

alleviate Plaintiff's purported economic loss (of which there is none alleged) or her baldly alleged emotional distress. Indeed, Plaintiff's purported emotional anguish rests on the mere existence of accurate professional information about her published online, a condition that would persist regardless of Doximity's conduct, and which cannot be remedied by money damages or modification of a single pre-populated profile on one source such as Doximity.com. Because the relief sought would not likely redress the alleged harm, Article III's redressability requirement is likewise not satisfied. See *Lujan*, 504 U.S. at 561.

For these independent reasons, Plaintiff lacks Article III standing, and the Complaint should be dismissed under Rule 12(b)(1).

## V.    CONCLUSION

For the reasons set forth above, Doximity respectfully requests that the Court grant this motion to dismiss the Complaint.

Dated: April 10, 2026                         **MCDERMOTT WILL & SCHULTE LLP**


By:    */s/ J. Jonathan Hawk*
       J. JONATHAN HAWK
       Attorneys for Defendant
       DOXIMITY, INC.