J. Jonathan Hawk (SBN 254350)
jhawk@mcdermottlaw.com
Arianna R. Swazer (SBN 359884)
aswazer@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:    1 310 277 4110
Facsimile:    1 310 277 4730

Attorneys for Defendant DOXIMITY, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| KELSEY THAYER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOXIMITY, INC.<br><br>Defendant. | CASE NO. 3:26-cv-01206-TLT<br><br>**DEFENDANT DOXIMITY, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF 1) PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Doximity, Inc.'s Request for Judicial Notice; [Proposed] Order]*<br><br>Date:         July 14, 2026<br>Time:         2:00 p.m.<br>Courtroom:    9 – 19th Floor<br>Judge:        Hon. Trina L. Thompson<br><br>Complaint Filed:    February 9, 2026 |

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that a hearing on Defendant Doximity, Inc.'s ("Doximity") Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") will be held on July 14, 2026 at 2:00 p.m., or as soon thereafter as this matter can be heard, in Courtroom 9 – 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Judge Trina L. Thompson presiding. This Motion is made pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and is based on the ground that the allegations set forth in the Complaint fail to state a claim for which relief may be granted as to any of Plaintiff Kelsey Thayer's ("Plaintiff") four claims.

As to Plaintiff's First Claim for Relief for common law misappropriation of name and likeness, the Complaint fails to allege facts to give rise to any plausible claim. The alleged use of Plaintiff's name and limited, publicly-available business information (e.g., job title) on Doximity.com, which was obtained from third party data sources, was merely incidental under the circumstances pleaded. Incidental use of such information in this context is not actionable as a matter of law in connection with a claim for misappropriation of name and likeness.

As to Plaintiff's Second Claim for Relief for statutory misappropriation of name and likeness under California Civil Code section 3344 ("Section 3344"), the Complaint fails to allege facts to give rise to any plausible claim for several reasons. As with Plaintiff's First Claim for Relief, the Complaint fails to allege use of Plaintiff's limited information was anything more than incidental. The Complaint also fails to plead the required elements of injury and a "direct connection" between the alleged use of Plaintiff's information and the purported commercial purpose underlying the use.

As to Plaintiff's Third Claim for Relief for violation of the unlawful and unfair prongs of Cal. Bus. & Prof. Code Sec. 17200, *et seq.* ("Section 17200" or the "UCL"), the Complaint fails to allege facts to give rise to any plausible claim for several reasons. The Complaint fails to allege standing under the UCL because it fails to allege injury-in-fact, as set forth in Doximity's concurrently filed motion to dismiss under Rule 12(b)(1), which is incorporated herein by reference. It also fails to allege lost money or property as required to establish standing under the UCL. Separately, the Complaint fails to allege a violation of any other law as a predicate to a UCL claim under its unlawful

prong, and the Complaint further fails to allege anything that could sustain a UCL claim under its unfair prong.

As to Plaintiff's Fourth Claim for Relief for "unjust enrichment," the Complaint fails to allege sufficient facts to give rise to a plausible claim given that unjust enrichment is not a stand-alone claim, and the Complaint also fails to allege that Plaintiff conferred an economic benefit on Doximity under the circumstances pleaded here.

Finally, even if the Complaint sufficiently pleads any cause of action, Doximity is immune from any and all such claims in the Complaint under the Communications Decency Act, 47 U.S.C. section 230(c)(1) and (3) ("Section 230"). Doximity is an interactive computer service that the Complaint seeks to hold liable as a publisher for content created by third parties.

Doximity's Motion is supported by its Memorandum of Points and Authorities, its Request for Judicial Notice ("RJN"),[1] the pleadings and papers on file in this action, any matter that is judicially noticeable, and the arguments of the Parties at the hearing on Doximity's Motion.

Dated: April 10, 2026

**MCDERMOTT WILL & SCHULTE LLP**

By:   /s/ J. Jonathan Hawk
          J. Jonathan Hawk

Attorneys for Defendant DOXIMITY, INC.

---

[1] This Motion is premised on the allegations in the Complaint and materials properly considered by the Court in connection with a motion under Rule 12(b)(6). Doximity's reliance herein on materials incorporated into the Complaint or subject to judicial notice is not intended to convert this Motion to a motion for summary judgment under Rule 56.

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     QUESTIONS PRESENTED..................................................................................4

III.    BACKGROUND ..................................................................................................4

IV.     ARGUMENT .......................................................................................................6

         A.      The Complaint Fails to Sufficiently Plead Claims for Purported Misappropriation of Name and Likeness Under Either the Common Law or Civil Code Section 3344 (First and Second Claims for Relief, Respectively) ...........................................................7

                 1.      Element (1), Common Law and Section 3344 Claims: The Complaint Does Not and Cannot Sufficiently Plead that Doximity "Used" Plaintiff's Likeness In Anything More Than an Incidental Manner ...............................................8

                 2.      Element (4), Section 3344 Claim Only: The Complaint Does Not and Cannot Sufficiently Plead Injury ...............................................................................10

                 3.      Element (6), Section 3344 Claim Only: The Complaint Does Not and Cannot Sufficiently Plead a "Direct Connection" Between the Alleged Use of Plaintiff's Likeness and the Purported Commercial Purpose ........................12

         B.      The Complaint Fails to Sufficiently Plead Its Claim for Unjust Enrichment (Fourth Claim for Relief)....................................................................................................14

         C.      The Complaint Fails to Sufficiently Plead Its Claim Under Cal. Bus. & Prof. Code Sec. 17200, *et seq.* (Third Claim for Relief).............................................................16

                 1.      The Complaint Fails to Sufficiently Plead Statutory Standing As Required to Maintain a UCL Claim......................................................................................16

                 2.      The Complaint Fails to Sufficiently Plead a UCL Claim Under Either The Unlawful or Unfair Prongs...............................................................................17

                         a.      Unlawful Prong......................................................................................17

                         b.      Unfair Prong..........................................................................................18

         D.      Any Well Pleaded Claims In the Complaint Are Barred by Section 230(c)(1).........19

                 1.      Doximity Satisfies All Three Prongs Required to Establish Immunity Under Section 230(c)(1) From all Claims Pleaded in the Complaint.......................20

                         a.      Prong 1: Doximity Is An Interactive Computer Service...................20

                         b.      Prong 2: Plaintiff's Claims Seek to Treat Doximity as a Publisher...21

                         c.      Prong 3: The Information At-Issue In the Complaint Is Provided by Another Information Content Provider...........................................22

                 2.      Section 230(e)(3) Preempts all Claims in the Complaint .............................24

DOXIMITY'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)
CASE NO. 3:26-CV-01206-TLT

V.    CONCLUSION................................................................................................................25

DOXIMITY'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)
CASE NO. 3:26-CV-01206-TLT

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aligo v. Time-Life Books, Inc.*,
1994 WL 715605 (N.D. Cal. Dec. 19, 1994) .......................................................... *passim*

*In re Apple Inc. App Store Stimulated Casino-Style Game Litig.*,
625 F. Supp. 3d 971 (N.D. Cal. 2022) ...............................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................6, 11

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ...............................................................19

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .......................................................20, 22, 24, 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................6, 11

*Bishay v. Icon Air., Inc.*,
2020 U.S. Dist. LEXIS 7939 (E.D. Cal. Jan. 15, 2020) .....................................................19

*Bogard v. Employers Cas. Co.*,
164 Cal. App. 3d 602 (1985) ...............................................................12

*Estate of Bride v. Yolo Tech., Inc.*,
112 F. 4th 1168 (9th Cir. 2024) ...............................................................20

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .........................................................3, 15

*Callahan v. Ancestry.com Inc.*,
2021 WL 783524 (N.D. Cal. Mar. 1, 2021)............................................... *passim*

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...................................................3, 18

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ...............................................................20

*Cohen v. Facebook, Inc.*,
2011 WL 5117164 (Oct. 27, 2011).............................................................11, 12

*Cohen v. Facebook, Inc.*,
252 F. Supp. 3d 140 (E.D.N.Y. 2017) ...........................................................25

*Cohen v. Facebook, Inc.*,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) ........................................................................ *passim*

*Comedy III Prod. v. Gary Saderup, Inc.*,
   25 Cal. 4th 387 (2001) ................................................................................................1, 8

*Davis v. Electronic Arts Inc.*,
   775 F.3d 1172 (9th Cir. 2015) ............................................................................................9

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994, 1001 (9th Cir. 2001) ..................................................................................1

*Eastwood v. Super. Ct.*,
   149 Cal. App. 3d 409 (1983) ......................................................................................1, 14

*Espinosa v. WhitePages, Inc.*,
   682 F. App'x. 607 (9th Cir. 2017) ...................................................................................14

*Fair Hous. Council v. Roommates.com, LLC*,
   489 F.3d 921 (9th Cir. 2007) ...................................................................................22, 23

*Fairfield v. Am. Photocopy Equip. Co.*,
   138 Cal. App. 2d 82 (1955) ......................................................................................9, 14

*Fleites v. Mindgeek S.A.R.L.*,
   801 F. Supp. 3d 1045 (C.D. Cal. 2025) ........................................................................ *passim*

*Fraley v. Facebook, Inc.*,
   803 F. Supp. 2d 785 (N.D. Cal. 2011) .....................................................................17, 18

*Gentry v. eBay*,
   99 Cal. App. 4th 816 (2002) .....................................................................................21, 25

*In re Google, Inc. Priv. Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ..............................................................................19

*Graham v. Bank of America, N.A.*,
   226 Cal. App. 4th 594 (2014) ..............................................................................4, 18, 19

*Hassell v. Bird*,
   5 Cal. 5th 222 (2018) .......................................................................................................22

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018)..............................................................................21

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ........................................................................................15

*Holly v. Alta Newport Hosp., Inc.*,
   612 F. Supp. 3d 1017 (C.D. Cal. 2020) ...........................................................................12

*Jogani v. Super. Ct.*,
  165 Cal. App. 4th 901 (2008) ...............................................................................................15

*Johnson v. Harcourt, Brace, Jovanovich, Inc.*,
  43 Cal. App. 3d 880 (1975) .........................................................................................3, 13, 14

*Joseph v. Amazon.com*,
  46 F. Supp. 3d 1095,1105-06 (W.D. Wash. 2014) ...........................................................21

*Kimzey v. Yelp!, Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ...........................................................................................23

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) .........................................................................................23

*Korea Supply Co. v. Lockheed Martin Corp.*,
  20 Cal. 4th 1134 (2003) .....................................................................................................18

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) .......................................................................................................16

*Ladany v. William Morrow & Co., Inc.*,
  465 F. Supp. 870 (S.D.N.Y. 1978).................................................................................9, 10

*Landucci v. State Farm Ins. Co.*,
  65 F. Supp. 3d 694 (N.D. Cal. 2014) .................................................................................12

*Lemmon v. Snap, Inc.*,
  995 F.3d 1085 (9th Cir. 2021) ...........................................................................................21

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) .......................................................................................6, 23

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) ................................................................................................21

*Nelson v. Cty. of Sacramento*,
  926 F. Supp. 2d 1159 (E.D. Cal. 2013)..............................................................................12

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1222 (N.D. Cal. 2014) ....................................................................11, 12, 21

*Peterson v. Cellco Partnership*,
  165 Cal. App. 4th 1583 (2008) ..........................................................................................17

*Prager Univ. v. Google*,
  85 Cal. App. 5th 1022 (1022) ......................................................................................23, 25

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ...........................................................................................16

*Scott v. Citizen Watch Co. of Am., Inc.*,
   2018 WL 1626773 (N.D. Cal. Apr. 4, 2018) ...............................................................7, 8

*Slivinsky v. Watkins-Johnson Co.*,
   221 Cal. App. 3d 799 (1990) ..........................................................................................11

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ........................................................................................6, 24

*Steckman v. Hart Brewing, Inc.*,
   143 F. 3d 1293 (9th Cir. 1998) ......................................................................................24

*Upper Deck Co. v. Flores*,
   569 F. Supp. 3d 1050 (S.D. Cal. 2021).............................................................................9

*Upper Deck Co. v. Panini Am., Inc.*,
   533 F. Supp. 3d 956 (S.D. Cal. 2021)..............................................................................18

*Van Hook v. Curry*,
   2009 WL 773361 (N.D. Cal. Mar. 23, 2009).....................................................................24

*Yeager v. Cingular Wireless LLC*,
   673 F. Supp. 2d 1089 (E.D. Cal. 2009)...........................................................................8, 9

**Statutes**

47 U.S.C. § 230(c)(1)...............................................................................20, 22, 24, 25

47 U.S.C. § 230(e) ...........................................................................................20, 24

47 U.S.C. § 230(f)(2) ........................................................................................20, 21, 23

Cal. Bus. & Prof. Code Sec. 17200, *et seq.* ...........................................................16

Civil Code Section 3344 ................................................................................ *passim*

## I.    **INTRODUCTION**

The Complaint is premised on claims that are intended to "protect[] a person's name and likeness against appropriation by others for their advantage." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). Those legal doctrines notably do *not* provide someone a "right of censorship" over their name or likeness. *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 403 (2001). Yet, that is precisely what Plaintiff seeks via her Complaint in this case.

The Complaint bases all of its claims on allegations that Doximity publishes limited business information about medical professionals such as Plaintiff on Doximity.com, *which information is already publicly-available and obtained from third-party sources*. As to Plaintiff, that limited business information is her name, job title as "plastic surgery physician assistant," address of the medical business where she works, and name of her graduate school. Plaintiff has sued Doximity seeking to represent a nationwide class of "hundreds of thousands" of medical professionals who had similarly limited, already-public business information about them published on Doximity.com.

As the Complaint acknowledges, Doximity provides an online network for medical professionals who register accounts through Doximity.com. There are more than two million people who have chosen to register for the network, where registration and subsequent use of the network is free. Plaintiff stands in a position starkly different from registered users. Plaintiff has *not* registered an account on Doximity.com. Her limited business information has been published by Doximity only in a pre-populated profile that makes clear to people viewing it that she has *not* registered for the network. And as a non-registered user without access to the Doximity network, third party "business customers" do not pay Doximity to advertise or send recruiting messages to Plaintiff.

Notably, the Complaint does not allege that Plaintiff is a celebrity or that Doximity's publication of her limited business information implies that she endorses its network or its services. There are no allegations that Doximity put a spotlight on Plaintiff or her information; to the contrary, it stands among many pre-populated profiles for other medical professionals. There are no allegations that the limited business information published about Plaintiff contains anything unique or significant that could drive commercial benefit to Doximity. There are no allegations that anyone joined Doximity's free network or purchased anything from Doximity because they saw Plaintiff's

information on Doximity.com. There are no allegations that could plausibly show that Doximity generates—or could generate—revenue from its publication of Plaintiff's information. Nor are there allegations seeking to explain *how* Plaintiff purportedly lost money or suffered harm to her mental well-being based on merely seeing her limited information, which was already publicly available.

Nonetheless, the crux of all four claims in the Complaint is that Doximity misappropriated Plaintiff's name and likeness for its commercial gain, in violation of the common law, Section 3344, the UCL's unlawful and unfair prongs, and "unjust enrichment." The Complaint fails to sufficiently plead any of those claims for myriad reasons.

*First*, the Complaint's claims for common law and statutory misappropriation under Section 3344 (First and Second Claims for Relief) fail because the Complaint fails to plead that Doximity "used" Plaintiff's information in an actionable way. Merely publishing Plaintiff's limited business information is *not* actionable *per se* under any claim in the Complaint. *Fleites v. Mindgeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1081 (C.D. Cal. 2025). Publication of Plaintiff's limited, already-public business information among "hundreds of thousands" of other unclaimed profiles for other medical professionals is "incidental" at best, and not actionable as a matter of law even at the pleading stage, particularly where Plaintiff is not a celebrity, there is no allegation of falsity, and there is no allegation as to how Plaintiff's information could be unique or significant in driving commercial gain to Doximity. *Id.*; *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at \*2-3 (N.D. Cal. Dec. 19, 1994). And because all claims here are premised on common law and statutory misappropriation of likeness theories, the Complaint's failure to plead those two claims is fatal to the entirety of Plaintiff's case.

*Second*, the Complaint's claim for statutory misappropriation under Section 3344 (Second Claim for Relief) also fails because it fails to sufficiently plead the separate requirements of "mental anguish" and a "direct connection" between the use of Plaintiff's information and a "commercial purpose." As to injury, the Complaint must plead not only that Plaintiff suffered "mental anguish," but "facts that would suffice to show *how* the mere disclosure" of Plaintiff's limited and already-public business information "causes any cognizable harm." *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) ("*Cohen I*"). The Complaint merely alleges in conclusory fashion that Plaintiff suffered "mental anguish," but fails entirely to plead *how* Plaintiff seeing a *de minimis*

set of her business information could have caused that. That is insufficient. *Id.*

The Complaint also fails to plead facts that could plausibly allege any "direct connection" between Doximity's publication of Plaintiff's information and a commercial purpose. As described above, Plaintiff never registered for a Doximity account, meaning that third party "business customers" do not and cannot pay Doximity to advertise or send recruiting messages to Plaintiff. That can only happen for registered users who registered to use the Doximity network, not Plaintiff. There is nothing alleged to show that Plaintiff's limited, already-public information in particular was published on Doximity.com to drive some commercial benefit to Doximity. *Aligo*, 1994 WL 715605, at *3; *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 894-95 (1975).

*Third*, the Complaint fails to plead any claim for "unjust enrichment." That is not a stand-alone claim, and it is subject to dismissal for that reason alone. *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 132-33 (N.D. Cal. 2020). In any event, there is no allegation that Plaintiff conferred an economic benefit on Doximity, particularly where Plaintiff never registered an account on Doximity.com, and—as an individual not capable of being advertised to or recruited via the Doximity services purchased by third party "business customers"—never drove revenue for Doximity, particularly based on mere publication of business information already publicly available elsewhere.

*Fourth*, the Complaint fails to plead any UCL claim. The Complaint fails to plead statutory standing under the UCL because it fails to plead injury-in-fact, as set forth in Doximity's concurrently filed motion to dismiss under Rule 12(b)(1). It also fails to plead that Plaintiff lost money or property based on Doximity's conduct. Again, Plaintiff has no vested interest in any money or property here, where Doximity's revenues are generated from "business customers" paying to advertise to or recruit *registered* users of the Doximity network, which Plaintiff acknowledges does not pertain to her.

The Complaint similarly fails to sufficiently plead the merits of any UCL claim under its unlawful or unfair prongs. It fails to plead any violation of any other law that the UCL's unlawful prong can be tethered to, as discussed herein. *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016). It also fails to plead any claim under the unfair prong of the UCL, in that it includes no allegations of any constitutional, statutory or regulatory provision that Doximity's conduct could violate, or that Doximity's conduct threatens an incipient violation of an antitrust law,

or violates the policy or spirit of an antitrust law. *See Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 610 (2014). Again, that is insufficient and the Complaint's UCL claim must fail at the pleading stage. *Id.*

Finally, and even assuming *arguendo* that the Complaint sufficiently pleads any claim (it does not), Section 230 bars any such claim. As the Complaint shows, Doximity is an "interactive computer service" providing an online network, and Plaintiff seeks to hold Doximity liable under state law claims for publishing content from third parties. That is *per se* barred by Section 230's immunities. *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021).

For these reasons, as explained more fully below, the Complaint should be dismissed.

## II.    QUESTIONS PRESENTED

1.    Does the Complaint sufficiently allege any of its four claims for relief?

2.    Even if the Complaint sufficiently pleads any claim, does Section 230 provide Doximity immunity from all claims that are sufficiently pleaded in the Complaint?

## III.    BACKGROUND

The Complaint alleges that Doximity operates Doximity.com, which serves as an online "medical professional network." Compl., ¶¶ 7, 29. The Complaint alleges that Doximity, as relevant here, "pre-populate[s]" "professional profile[s]" for doctors, nurse practitioners, and physician assistants, and allows those medical professionals to "claim" their respective pre-populated profiles on Doximity.com to "gain access to various services offered by [Doximity]" through its platform, including "a professional social network, a newsfeed, and workflow tools like secure messages, a telehealth platform, fax capabilities, and an e-signature tool." *Id.*, ¶¶ 22, 29-30.

For the more than two million medical professionals who have chosen to claim their profiles on Doximity.com, "[t]he Doximity platform is free to join and use." *Id.*, ¶ 29 n. 5 (citing to Doximity's Form 10-K, "Annual Report"); RJN, Ex. A at pp. 3-4. Moreover, the "pre-populated Doximity professional profile[s], reflect[] ***publicly and commercially available third-party data***, which members can further supplement, update, and refine." *Id.* (emphasis added). Doximity, for its part, "publishes and disseminates [those] profile pages," and maintains the network of more than two million healthcare professionals who have registered such profiles through Doximity.com to be part

of the online "medical professional network." *Id.*, ¶ 43; RJN, Ex. A at pp. 3-4.

The Complaint alleges that Doximity also generates revenue in connection with its network of medical professionals who have already claimed their profiles and become registered users. *Id.*, ¶¶ 31-41. Specifically, the Complaint alleges that Doximity offers "advertising and recruiting services" to "business customers." *Id.* Those third party "business customers" pay Doximity to access Doximity's tools that enable them to advertise to or recruit medical professionals who have claimed their free profiles on the Doximity platform. *Id.* In this regard, it is the entirety of the Doximity network's *registered* users that has commercial value to "business customers" who want a large pool of registered users to advertise to and recruit from. *Id.* ¶ 32. The Complaint notably does *not* allege that Doximity sells user data as part of its business model (which Doximity does not do).

As to Plaintiff, the Complaint alleges that Doximity published a pre-populated profile for her on its platform, displaying her name, job as a "plastic surgery physician assistant" in Santa Rosa, California, and that she attended the University of the Pacific from 2021 to 2023. *Id.*, ¶¶ 45-49. That pre-populated profile (with publicly available information from third party sources) made clear to people viewing it that Plaintiff had *not* registered to use the Doximity platform (*id.*, ¶ 64 at p. 21), and the page with Plaintiff's information provided buttons that a user could click to "Join Doximity" or login (*id.*, ¶ 49). Plaintiff "has never registered for [Doximity]'s Website, nor provided [Doximity] consent to use her name or identity in any manner, much less for the commercial purpose of advertising [Doximity]'s products and services." *Id.*, ¶ 48. There is also no allegation that Plaintiff ever contacted Doximity before filing this case to complain about the profile.

There are no allegations in the Complaint that anyone became a registered user of the Doximity platform because they saw Plaintiff's information on the website. Nor does the Complaint allege that any third party "business customer" paid Doximity so that it could advertise to or recruit Plaintiff or any of the other "hundreds of thousands" of medical professionals who have not claimed their pre-populated profiles. According to the Complaint's own allegations, that would *not* be possible in any event because "business customers" who pay Doximity can only access medical professionals who have claimed their profiles and thus joined the Doximity network, which Plaintiff admits she has not done. *Id.*, ¶ 48. The Complaint nonetheless alleges Plaintiff has suffered "mental

anguish, concern, and frustration" as a result of seeing her name, job title, and educational history on Doximity.com in connection with what was an unclaimed profile; and it alleges that Doximity "should have [] paid Plaintiff" and "hundreds of thousands" of other unregistered medical professionals for publishing such information in unclaimed/unregistered profiles that have been pre-populated with publicly available information. *Id.*, ¶¶ 42, 95, 123.

The Complaint goes on to assert four claims against Doximity, all premised on its "use [of Plaintiff's] name, identity, or personally identifying information." *Id.*, ¶ 60. It asserts claims under: each of California common law and Section 3344 for alleged misappropriation of Plaintiff's name and likeness (First and Second Claims for Relief); the UCL's unlawful and unfair prongs (Third Claim for Relief); and, a theory of "unjust enrichment" (Fourth Claim for Relief). *Id.*, ¶¶ 86-131. It seeks, among other things, to represent a nationwide putative class of persons, defined as "[a]ll natural persons residing in the United States for whom Defendant established a profile page on Doximity.com and who have not created an account on Doximity.com," and seeks to recover $750 in statutory damages and attorney fees for each class member under Section 3344. *Id.*, ¶¶ 42, 78.

## IV.   ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court, however, "is not required to accept as true legal conclusions couched as factual allegations." *Fleites*, 801 F. Supp. 3d at 1064 (citing *Iqbal*, 556 U.S. at 678). Nor is a court required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit[, or] to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Here, the Complaint does not and cannot sufficiently plead any of its four claims.

//

//

//

**A.      The Complaint Fails to Sufficiently Plead Claims for Purported Misappropriation of Name and Likeness Under Either the Common Law or Civil Code Section 3344 (First and Second Claims for Relief, Respectively)**

"California recognizes, in its common law and its statutes, the right of a person whose identity has commercial value—most often a celebrity—to control the commercial use of that identity." *Fleites*, 801 F. Supp. 3d at 1080 (citing *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001)). "The aim is 'to prevent others from misappropriating the economic value generated … through merchandising of the name, voice, signature, photograph, or likeness of the publicity holder." *Id.* (quoting *Youngevity Int'l v. Smith*, 350 F. Supp. 3d 919 (S.D. Cal. 2018)).

"To sustain a misappropriation of likeness [claim] under California's common law, plaintiff must prove '(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Id.*; *Aligo*, 1994 WL 715605, at *2 (quoting *Eastwood*, 149 Cal. App. 3d at 417).

California's related statutory claim for misappropriation of someone's name and likeness is set forth in Civil Code section 3344. Section 3344 does "not replace or codify the common law." *Fleites*, 801 F. Supp. 3d at 1080. Rather, the "remedies provided for under [Section] 3344 complement the common law cause of action," and a main difference between the common law and statutory claims are "the harm the plaintiff suffers: lost opportunity to benefit commercially from his own public identity on the one hand, and injury to feelings or peace of mind on the other." *Id.*; *Scott v. Citizen Watch Co. of Am., Inc.*, 2018 WL 1626773, at *3 (N.D. Cal. Apr. 4, 2018) (citing *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 541-42 (1993)). To plead a claim under Section 3344, a complaint must sufficiently allege all four elements above that govern a common law claim for misappropriation of likeness, plus "two additional elements: ([5]) defendant knowingly used the plaintiff's name, photograph or likeness for purposes of advertising or solicitation and ([6]) a direct connection between the use and commercial purpose." *Id.*; Cal. Civ. C. § 3344.

While separate, the common law and statutory claims have overlapping legal elements and are generally underpinned by the same factual allegations. It follows that courts often address them together. *See, e.g.*, *Fleites*, 801 F. Supp. 3d at 1080-81; *Aligo*, 1994 WL 715605, at *2-3.

**1.** **Element (1), Common Law and Section 3344 Claims: The Complaint Does Not and Cannot Sufficiently Plead that Doximity "Used" Plaintiff's Likeness in Anything More Than an Incidental Manner**

Under California law, the "incidental use of a plaintiff's name or likeness does not give rise to liability under a common law claim of commercial misappropriation or an action under Section 3344." *Scott*, 2018 WL 1626773, at \*4 (quoting *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1254 (N.D. Cal. 2014); *see also Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009). "The rationale underlying this doctrine is that incidental use has no commercial value, and allowing recovery to anyone briefly depicted or referred to would unduly burden expressive activity." *Scott*, 2018 WL 1626773, at \*4 (quoting *Yeager*, 673 F. Supp. 2d at 1100). Indeed, misappropriation of likeness claims do not provide anyone a "right of censorship" over their name or likeness. *Comedy III Prod.*, 25 Cal. 4th at 403.

Whether the incidental use exception applies "is determined by the role that the use of the plaintiff's name or likeness plays in the main purpose and subject of the work at issue." *Id.* "Generally, a plaintiff's identity is not appropriate 'by mere mention of it' nor where 'it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him.'" *Id.* (quoting Rest. (Second) of Torts, § 652C, (comment d)); *Fleites*, 801 F. Supp. 3d at 1081.

Factors considered in this analysis include: "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work, and (4) the duration, prominence or repetition of the likeness relative to the rest of the publication." *Id.* Importantly, this analysis scrutinizes the role played by the use of a plaintiff's likeness "with respect to the *entire publication*." *Aligo*, 1994 WL 715605, at \*2.

Courts assessing "incidental use" in connection with motions to dismiss have found use of a plaintiff's likeness was incidental, and thus *not* actionable, in a variety of cases, including: using a picture of a plaintiff who is not a public figure on the cover of Rolling Stone magazine, and later showing that cover as part of a video montage with other pictures promoting the sale of a rock music anthology (*Aligo*, 1994 WL 715605, at \*2-3); placing revenue-generating advertisements next to a

homemade video of a plaintiff, also a non-public figure, that was uploaded to the defendant's video sharing platform alongside other videos (*Fleites*, 801 F. Supp. 3d at 1081); and, mentioning the name of a plaintiff, a quasi-public figure, in a book about the terrorist attack at the Munich Olympic games, on 13 of 458 pages in the book and as one of 101 other people mentioned (*Ladany v. William Morrow & Co., Inc.*, 465 F. Supp. 870, 881 (S.D.N.Y. 1978) (cited with approval in *Aligo*, 1994 WL 715605, at *3, and *Yeager*, 673 F. Supp. 2d at 1101)). Those courts found that using the likenesses of plaintiffs, as largely non-public figures, were *not* significant as a matter of law when viewed in context of the entire works, which contained many other images, videos, and references to other people.

Those decisions stand in sharp contrast to other case law, where courts found that markedly different uses of plaintiffs' respective likenesses were *not* incidental to the work at-issue, e.g.: trading cards prominently featuring Michael Jordan's name, image, and autograph on both sides (*Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1069-70 (S.D. Cal. 2021)); the Madden NFL video game featuring historic NFL players as part of teams (*Davis v. Electronic Arts Inc.*, 775 F.3d 1172, 1180-81 (9th Cir. 2015)); and, an advertisement for a defendant's wireless network naming Chuck Yeager and his accomplishment breaking the sound barrier (*Yeager*, 673 F. Supp. 2d at 1101). In the same vein, courts have found even use of a non-public person's likeness goes beyond mere incidental use when it is clear from the face of an advertisement that the advertisement falsely claims the private citizen endorses the defendant's product. *Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal. App. 2d 82, 85, 87 (1955). Indeed, when a challenged work is alleged to have put a spotlight on a plaintiff's likeness to differentiate that person from large numbers of other people whose likenesses are also used, and to add something significant to the work, the use of plaintiff's likeness is *not* incidental.

Here, the pre-populated page Plaintiff complains of cannot be anything more than incidental to Doximity offering its network of medical professionals. Doximity maintains an online network through Doximity.com of more than two million *registered* medical professionals with profile pages that they claimed. RJN, Ex. A at pp. 3-4. The pre-populated profile for Plaintiff is, according to the Complaint's own allegations, one among "hundreds of thousands" of additional pre-populated profile pages for other medical professionals who have *not* registered for the network. Compl., ¶ 14.

Plaintiff's pre-populated profile is a drop in the ocean among the totality of registered and/or

unregistered profiles on Doximity.com,[2] and there is no allegation that Plaintiff's information is anything special in the context of that website. There is no allegation in the Complaint that Plaintiff is any sort of public figure whose celebrity could drive others to register on Doximity.com. There is no allegation that the pre-populated profile implies that Plaintiff endorses Doximity.com. There is also no allegation that Plaintiff's unregistered profile could drive "business customers" to pay Doximity to advertise to or recruit Plaintiff as someone who is not even part of Doximity's network.

Put simply, there are no allegations that could justify considering Plaintiff's limited information as being of a unique quality or value, as contributing something significant to the website, or even being notable relative to the allegedly "hundreds of thousands" (or even millions) of other profiles. This is not a case where Michael Jordan's likeness was used on a trading card. Far from it. Here, the allegations are closely analogous to circumstances recognized at the pleading stage to constitute non-actionable, incidental use of someone's likeness, i.e., the likeness of one non-public figure among many, which use itself does not spotlight the plaintiff or add anything unique or significant to the challenged conduct. *Aligo*, 1994 WL 715605, at \*2-3; *Ladany*, 465 F. Supp. at 881.

Any use of Plaintiff's likeness as alleged in the Complaint was incidental at best as a matter of law, and thus not actionable under either the common law or statutory claims for misappropriation of likeness. The Complaint's First and Second Claims for Relief fail for this reason alone. And along with those two claims, the entire Complaint that is premised on them fails as discussed below.

**2.      Element (4), Section 3344 Claim Only: The Complaint Does Not and Cannot Sufficiently Plead Injury**

The Complaint's claim under Section 3344 also fails to adequately plead injury.

The "gist" of a statutory misappropriation claim under Section 3344 is "injury to [the plaintiff's] feelings," namely where a plaintiff's likeness is misappropriated and its use causes injury to the plaintiff's "feelings and mental well-being." *Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990); *Perkins*, 53 F. Supp. 3d at 1245-56. Consistent with the pleading standards as clarified by the Supreme Court in *Iqbal* and *Twombly*, to survive a motion to dismiss under Rule

---

[2] This is the case irrespective of whether the pre-populated profile for Plaintiff is compared against unclaimed profiles for medical professionals ("hundreds of thousands"), or all claimed and unclaimed profiles, i.e., more than two million.

12(b)(6) a complaint must allege not only that the plaintiff suffered "hurt feelings," but also must allege "facts that would suffice to show … *how*" the alleged use of their likeness caused "cognizable harm." *Cohen*, 798 F. Supp. 2d at 1097 (emphasis added); *see also Cohen v. Facebook, Inc.*, 2011 WL 5117164, at *1, 3 (Oct. 27, 2011) ("*Cohen II*").

*Cohen* is illustrative of how a complaint must allege injury under Section 3344 to survive a motion to dismiss. There, the plaintiffs alleged that Facebook violated Section 3344 by displaying their names and images on the home page of another Facebook user in connection with (mis)representing that the plaintiffs used Facebook's "Friend Finder" feature. *Cohen I*, 789 F. Supp. 2d at 1092. According to the plaintiffs' allegations, they never consented to Facebook using their name or image to promote Friend Finder; using their images allegedly implied that they endorsed Friend Finder and caused them "injury-in-fact" as a result of Facebook's purported misappropriation of their respective likenesses. *Id.* at 1097. The Court dismissed the plaintiffs' Section 3344 claim under Rule 12(b)(6), finding that the complaint failed to sufficiently plead injury.

The Court noted that the plaintiffs' complaint in *Cohen I* failed to allege "hurt feelings" as required under Section 3344. *Id.* at 1097. It went on to hold that, even if the "plaintiffs had included a conclusory assertion of 'hurt feelings,' they have alleged no facts that would suffice to show *how* the mere disclosure to their Facebook friends that they have employed the Friend Finder service (even assuming some of them did not) causes them any cognizable harm, regardless of the extent to which that disclosure could also be seen as an implied endorsement by them of the service." *Id.* "[P]laintiffs must at a minimum, plead that they suffered mental anguish as a result of the alleged misappropriation, and a plausible supporting factual basis for any such assertion." *Id.* They did not. *Id.*; *Cohen II*, 2011 WL 5117164, at *3 ("that the California Legislature has provided for statutory damages in the amount of $750 for an individual who is unable to *quantify* the amount of damages suffered does not eliminate the requirement of a cognizable injury in the first instance"); *Perkins*, 53 F. Supp. 3d at 1242-44 (citing *Miller v. Collectors Univ., Inc.*, 159 Cal. App. 4th 988 (2008)).[3]

---

[3] The requirement at the pleading stage to assert specific factual allegations that go beyond mere conclusory assertions of mental harm, and to explain the nature and extent of the alleged injury, is not unique to Section 3344. *See*, *e.g.*, *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1026-27 (C.D. Cal. 2020). Such a requirement exists when a plaintiff attempts to plead emotional distress. *Id.* (in data breach case, granting motion to dismiss while recognizing that plaintiff's

*Cohen I* and *Cohen II* stand for the proposition that the injury element of Section 3344 cannot be sufficiently pleaded by alleging merely that the plaintiff's likeness was used, the plaintiff saw it, and it hurt the plaintiff's feelings. The same should hold true here. Compl., ¶ 99.

The Complaint alleges only that Plaintiff "suffered mental anguish," "confusion," and "frustration" based on merely seeing the pre-populated profile, *id.*, ¶ 95, but it fails to include allegations that could plausibly demonstrate *how* seeing her name next to *de minimis*, already-publicly-available business information on the Doximity website caused purported injury to Plaintiff's mental health or well-being. *Cohen I*, 798 F. Supp. 2d at 1097. Indeed, the Complaint is required to plead specific factual allegations that would explain the question of "how" the use of her likeness caused mental harm, i.e., what about seeing limited, publicly-available professional information about career, such as job title, in this context so bothered Plaintiff that it harmed her mental well-being, or caused her "confusion" or "frustration." The Complaint does not do that.

The allegations in the Complaint here stand nearly on all fours with the complaints that were dismissed in *Cohen I* and *Cohen II*, in asserting a claim under Section 3344 claim while including, at most, a conclusory allegation of "mental anguish." Because merely seeing her name and business information being allegedly used by Doximity is insufficient, the Complaint comes nowhere close to properly pleading *how* the purported mental anguish was caused as required under Section 3344. The Second Claim for Relief under Section 3344 fails for this independent reason as well.

> **3.    Element (6), Section 3344 Claim Only: The Complaint Does Not and Cannot  Sufficiently Plead a "Direct Connection" Between the Alleged Use of Plaintiff's Likeness and the Purported Commercial Purpose**

The Complaint fails to plead another required element under Section 3344, namely a "direct connection" between the use of Plaintiff's likeness and the commercial purpose of the work at-issue.

---

"allegations concerning her physical, mental, and emotional pain 'are too sparse and conclusory to support' her claims for damages."); *see also Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712 (N.D. Cal. 2014) (dismissing complaint where it included only conclusory allegations of, among others, mental anguish, and "fail[ed] to explain the extent of the mental distress suffered."); *Bogard v. Employers Cas. Co.*, 164 Cal. App. 3d 602, 617-18 (1985) (affirming trial court's order sustaining demurrer, where plaintiffs "failed to set forth any facts which indicate the nature or extent of any mental suffering incurred as a result of" the defendants' alleged conduct); *Nelson v. Cty. of Sacramento*, 926 F. Supp. 2d 1159, 1172 (E.D. Cal. 2013) (alleging "pain, grief, shame, humiliation, embarrassment, anger, depression, sleeplessness, anxiety, disappointment, damage to reputation, and worry" found to "lack specific facts to show their nature and extent.").

Section 3344 does *not* impose liability for a defendant using a plaintiff's likeness in "any commercial" context. *Aligo*, 1994 WL 715605, at *3. Among other things, a complaint alleging a claim under Section 3344 must also allege a "direct connection" between the purported use of the likeness and the commercial purpose for which it was used. *Id.*; *Johnson,* 43 Cal. App. 3d at 894-95 (sustaining demurrer). Failure to do so subjects the complaint to dismissal at the pleading stage. *Id.*

*Aligo* and *Johnson* are illustrative. In *Aligo*, the court recognized there was no "direct connection" between use of the plaintiff's likeness and the commercial purpose of the publication under Section 3344. There, the plaintiff was a private citizen, whose image was used on the cover of Rolling Stone magazine. The magazine cover with his image was later shown briefly alongside other images as part of a lengthy video montage advertising a music anthology offered for sale. *Aligo*, 1994 WL 715605, at *1, 3. Plaintiff there did "not allege that he is a celebrity or that viewers of the infomercial would be drawn to the music anthology *because of his appearance in it*." *Id.* at *3. Nor were there allegations that the defendant "used the photograph in an effort to convey Plaintiff's endorsement of the music anthology." *Id.* at *4. Rather, "the promotional value of the photograph is insignificant," and the court dismissed the complaint under Rule 12(b)(6). *Id.*

Similarly in *Johnson*, a textbook sold to college students included a republication of an article, discussing how the plaintiff received a substantial financial reward for returning lost cash. *Johnson*, 43 Cal. App. 3d at 883-84. The complaint alleged that the article, as republished as part of a much larger textbook, included the plaintiff's names, identities, and experiences. *Id.* at 885. The court recognized that the complaint failed to plead a "direct connection" under Section 3344 because the "article was not a primary reason for the textbook; nor was it a substantial factor in the students' purchases of the book." *Id.* at 895. The trial court in *Johnson* sustained a demurrer to the complaint on that basis, and the appellate court affirmed. *Id.* at 894-95; *see also Espinosa v. WhitePages, Inc.*, 682 F. App'x. 607, 608 (9th Cir. 2017) ("Espinosa failed to allege facts sufficient to show a direct connection between Whitepages, Inc.'s use of his name and a commercial purpose.").

The scope of this element under Section 3344 becomes clear when comparing the decisions discussed above to other case law where, by contrast, courts found very different allegations were sufficient to show a "direct connection" at the pleading stage. *See Eastwood*, 149 Cal. App. 3d at

421-26 (in distinguishing *Johnson*, finding that a direct connection was sufficiently pleaded under Section 3344 where a purportedly false story about celebrity Clint Eastwood's dating life was allegedly used to sell magazine copies); *Fairfield*, 138 Cal. App. 3d at 87 (recognizing that a direct connection was sufficiently pleaded under Section 3344 where an advertisement expressly, falsely claimed that a private citizen endorsed the defendant's product). To survive a motion to dismiss, the complaint must allege that there is something specific and notable about the plaintiff such that use of her or his likeness was included in a publication to drive some commercial benefit for the defendant. *Aligo*, 1994 WL 715605, at *3; *Johnson*, 43 Cal. App. 3d at 895.

That is not the case here. The Complaint is required to allege facts to answer the following question: what about Plaintiff's specific limited information, displayed as part of an unclaimed pre-populated profile on Doximity.com and among millions of registered profiles (and "hundreds of thousands" of unclaimed profiles), drove commercial benefit to Doximity? There are no allegations anywhere in the Complaint that do that. The Complaint is devoid of any allegations showing that there is something notable or specific about Plaintiff's likeness that did, or even could, drive a commercial benefit for Doximity. There is, for example, no allegation that Plaintiff is famous (a public or quasi-public figure) or endorses Doximity, or that "business customers" did (or could have) paid Doximity to reach Plaintiff, as an unregistered user, through its platform.

The Complaint's allegations under these circumstances are insufficient to plead the required element of a "direct connection" between the use of Plaintiff's likeness and commercial purpose of the work. The Complaint's claim under Section 3344 must fail for this reason, too.

**B.     The Complaint Fails to Sufficiently Plead Its Claim for Unjust Enrichment (Fourth Claim for Relief)**

Two problems exist with the Complaint's Fourth Claim for Relief for "unjust enrichment," and each such problem independently requires the claim to be dismissed with prejudice.

First, there is no stand-alone claim for unjust enrichment under California law, and such claims are subject to dismissal. *Brodsky*, 445 F. Supp. 3d at 132-33 ("courts have consistently dismissed stand-alone claims for unjust enrichment.") (citations omitted); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("[u]njust enrichment is not a cause of action, just a restitution

claim."); *Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 911 (2008) (citing *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003)). Unjust enrichment "is a general principle underlying various doctrines and remedies, including quasicontract." *Id.*

Here, the Complaint's Fourth Claim for Relief is no claim at all, and for this reason alone it should be dismissed under Rule 12(b)(6). *Id.*

Second, even if "unjust enrichment" were a valid stand-alone claim (it is not), it is fatal to the Fourth Claim for Relief that Plaintiff never registered any account on Doximity's platform. The premise of the Complaint's "unjust enrichment" claim is that Plaintiff and the putative class members "have [allegedly] conferred an economic benefit on" Doximity. Compl., ¶ 128. But that conclusory allegation, as the cornerstone of the Complaint's entire unjust enrichment claim, is undermined by the Complaint's specific factual allegations about how Doximity purportedly generates revenue.

Here, individuals can register accounts on Doximity for free. RJN, Ex. A at pp. 3-4 (Doximity 10-K, cited at Compl., ¶ 29 n. 5; "[t]he Doximity platform is free to join and use … ."). According to the Complaint, Doximity then provides a paid service to third parties, who, with a paid subscription, can use Doximity's platform to advertise to and recruit individuals with *registered* accounts on that platform. Compl., ¶¶ 26-32. There is no allegation in the Complaint that Doximity sells any individuals' information, registered user or otherwise (and Doximity indeed does not).

The Complaint admits Plaintiff has never been a registered user of the Doximity platform. The same holds true for the putative class, i.e., people who have "not created an account on Doximity.com." Compl., ¶¶ 48, 78. Nowhere does the Complaint allege that anyone signed up for Doximity's platform *because* Plaintiff's name and business information were purportedly displayed.

Reading the Complaint's allegations together, it acknowledges that under no circumstances did Doximity, or could Doximity have, generated revenue at the expense of Plaintiff—someone who never registered an account and whose name never led anyone else to register. At best, Doximity may have generated revenue associated with other individuals who registered accounts, i.e., persons who advertisers or recruiters paid a subscription fee to access via the Doximity platform. *See* Compl., ¶ 35. But again, that group of people necessarily excludes Plaintiff and her putative class.

The Complaint's own allegations show that there is no plausible way Doximity could have

derived any benefit at Plaintiff's expense, meaning the Complaint's claim for unjust enrichment cannot survive a motion to dismiss under Rule 12(b)(6) for this independent reason as well.

### C. The Complaint Fails to Sufficiently Plead Its Claim Under Cal. Bus. & Prof. Code Sec. 17200, *et seq.* (Third Claim for Relief)

The Complaint fails to allege statutory standing under the UCL, and fails to allege facts sufficient to constitute claims under the UCL's unlawful and unfair prongs.

### 1. The Complaint Fails to Sufficiently Plead Statutory Standing as Required to Maintain a UCL Claim

Standing under the UCL is more restrictive than the Constitutional standing requirement of "injury in fact." *Cohen I*, 798 F. Supp. 2d at 1098 (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011)). A complaint establishes standing to assert a UCL claim only if it alleges *both* that: (1) the plaintiff lost or was deprived of money or property sufficient to qualify as injury in fact, i.e., economic injury; and (2) "the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp.*, 51 Cal. 4th at 322 (citing Cal. Bus. & Prof. Code § 17204); *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010). If a complaint fails to allege either of those things, then the plaintiff lacks statutory standing to sue under the UCL and the complaint should be dismissed for failure to state a claim. *Peterson v. Cellco Partnership*, 165 Cal. App. 4th 1583, 1590 (2008) (sustaining demurrer to complaint's UCL claim for failure to plead both aspects of standing).

Here, the Complaint fails to sufficiently allege either element of standing for a UCL claim.

First, the Complaint fails to allege injury in fact, as set forth in Doximity's concurrently filed motion to dismiss for lack of Article III standing under Rule 12(b)(1). Doximity incorporates herein by reference its arguments from that motion, *see* ECF No. 13 at pp. 6-12, and the Complaint's UCL claim should be dismissed for failing to plead this first required element of standing.

Second, the Complaint fails to allege that Plaintiff lost money or property as a result of any alleged unfair competition by Doximity. The Complaint does not assert any allegations that Plaintiff paid Doximity or anyone else any money in connection with her information purportedly being displayed on Doximity.com. The Complaint also does not allege any basis on which Plaintiff could

have a vested interest in any other money or property held by Doximity. As explained above in light of how Doximity purportedly generates revenues from third party advertisers and recruiters, Doximity never generated any revenues that could be associated with Plaintiff, where: she "has never registered for [Doximity]'s Website;" there is no allegation that Plaintiff's data was sold; and, there is no allegation that, because of the purported use of Plaintiff's business information, anyone else registered for the platform. Compl., ¶¶ 26-32, 48; *Fraley v. Facebook, Inc.*, 803 F. Supp. 2d 785, 811 (N.D. Cal. 2011) (expectation interest in statutory damages not a "vested interest").

The Complaint does nothing to address these concerns, where the gravamen of Plaintiff's UCL claim is that Doximity purportedly displayed her name and business information in connection with an unregistered account on its platform. The Complaint merely alleges Plaintiff is entitled to statutory damages of $750 under Section 3344, and Doximity "reap[ed] unfair and illegal profits at the expense of the plaintiffs [sic] and class members." Compl., ¶ 124. But those conclusory allegations, which are undermined by specific factual allegations in the Complaint, do not and cannot satisfy the second element of standing for a UCL claim, i.e., to tie Doximity's alleged conduct to money or property in which Plaintiff has a vested interest. *Compare Fraley*, 803 F. Supp. 2d at 811 (finding plaintiffs sufficiently alleged loss of money or property where they were registered Facebook users, Facebook as a result of them being registered was able to and did use their names to publish content implying they endorsed a separate Facebook product, and the plaintiffs' alleged losses under those specific circumstances, i.e., a "failure to compensate them for their valuable endorsement.").

The Complaint fails to allege either of the elements required for statutory standing under the UCL, and the Complaint's Third Claim for Relief should be dismissed for this reason alone.

> **2.    The Complaint Fails to Sufficiently Plead a UCL Claim Under Either the Unlawful or Unfair Prongs**
>
> **a.    *Unlawful Prong***

"[V]iolation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Graham*, 226 Cal. App. 4th at 610 (no basis for a UCL claim based on unlawful conduct where the complaint did not allege a violation of law). "A UCL claim based on the unlawful prong rises or falls with the underlying claim." *Upper Deck Co. v. Panini Am., Inc.*, 533 F. Supp. 3d

956, 968 (S.D. Cal. 2021) (citing *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012)).

Here, the Complaint alleges in conclusory fashion that Doximity's conduct was "unlawful under the UCL because it violates California's common-law and statutory right of publicity" as set forth in the Complaints First and Second Claims for Relief. Compl., ¶ 116. But as explained above, the Complaint fails to sufficiently plead any such claims. Plaintiff's UCL claim under the unlawful prong is "tethered to the allegations stated for [her] other claims" which are insufficiently pleaded, and so too does this aspect of the Complaint's UCL claim fail. *Caraccioli*, 167 F. Supp. 3d at 1064.

### b.   Unfair Prong

Under the UCL, "a practice may be deemed unfair even if not specifically proscribed by some other law." *Korea Supply Co. v. Lockheed Martin Corp.*, 20 Cal. 4th 1134, 1145 (2003). "California courts have characterized unfair business practices under the UCL in varied ways[;] [f]or example, some California courts have characterized an unfair business practice as one that 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Bishay v. Icon Air., Inc.*, 2020 U.S. Dist. LEXIS 7939, at *10-11 (E.D. Cal. Jan. 15, 2020) (quoting *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155 (2018)).

Nonetheless, "[a] plaintiff alleging an unfair business practice must show the 'defendant's "conduct is tethered to an[] underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law.'" *Graham*, 226 Cal. App. 4th at 613 (quoting *Wilson v. Hynek*, 207 Cal. App. 4th 999, 1008 (2012)). Alternatively, "[t]he test of whether a business practice is unfair involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006) (quoting *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 718-19 (2001)). The Complaint's allegations do not satisfy any of these standards.

The Complaint merely alleges that Doximity's purported conduct "offend[s] established public policy and cause[s] harm to the Plaintiff and the Class members, [and] outweighs any benefit to consumers or competition." Those conclusory allegations fail to tether Doximity's purported

conduct to any sufficiently pleaded "constitutional, statutory, or regulatory provision," or to allege how it could "threaten an incipient violation of antitrust law, or violate[] the policy or spirit of an antitrust law." There are no specific factual allegations whatsoever in the Complaint explaining, for example, what public policy is purportedly offended, or how the gravity of the alleged harm to Plaintiff is greater than Doximity's expressive activity.

Further, nothing in the Complaint's allegations can be construed to show that Doximity acted immorally, unethically, oppressively, unscrupulously or in a way that is substantially injurious to consumers. Compl., ¶ 122; *see In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014) (recognizing that, "[c]ourts in this district have consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms.") (citations omitted). At most, and as explained above, Doximity incidentally used Plaintiff's name and business information on its website, along with the names and business information of at least hundreds of thousands of other medical professionals. Compl., ¶ 59. But Doximity did not generate any revenue associated with Plaintiff, as the Complaint's specific factual allegations acknowledge. *Id.*, ¶¶ 26-32, 48.

The Complaint's allegations of purportedly anticompetitive conduct under the UCL's unfair prong are conclusory and insufficient to withstand a motion to dismiss.

**D.    Any Well Pleaded Claims in the Complaint Are Barred by Section 230(c)(1)**

Even assuming *arguendo* that the Complaint sufficiently pleads any claim (it does not), all of the claims set forth in the Complaint are barred by Section 230(c)(1).

Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230(e)(3) goes on to provide that, "no cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *See also Estate of Bride v. Yolo Tech., Inc.*, 112 F. 4th 1168, 1175 (9th Cir. 2024).

Together, these two provisions provide for a "robust" immunity when the party asserting a defense under Section 230 satisfies a three-prong test, showing that (1) the defendant is a provider or user of an interactive computer service, "(2) whom a plaintiff seeks to treat, under a state law cause

of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *Wozniak*, 100 Cal. App. 5th at 908.

Doximity satisfies all three prongs needed to establish immunity under Section 230(c)(1).

### 1.    Doximity Satisfies All Three Prongs Required to Establish Immunity Under Section 230(c)(1) From all Claims Pleaded in the Complaint

#### a.    Prong 1: Doximity Is an Interactive Computer Service

Section 230 defines an interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). Courts in California and within the Ninth Circuit have found that this definition encompasses a wide range of internet platforms and services. *See e.g. Gentry*, 99 Cal. App. 4th at 831 n.7.

For example, courts have found at the pleading stage that LinkedIn is an interactive computer service, where plaintiffs' complaint alleged LinkedIn is the "operator of a popular social networking website." *Perkins*, 53 F. Supp. 3d at 1247. Courts have also found at the pleading stage that "social networking sites like Facebook.com, and online matching services like Roommates.com and Matchmaker.com, are 'interactive computer services,'" including where platforms are allegedly accessed through smartphone apps and not just via websites. *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588 (S.D.N.Y. 2018) (collecting cases); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 25 (2021) (Twitter is an "interactive computer service"); *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021) (Snapchat was alleged to "permit[] its users to share photos and videos through Snap's servers and the internet."). Courts have even found Ancestry.com is an interactive computer service where the complaint alleged that it "[took] information and photos from the donated yearbooks and republish[ed] them on its website in an altered format." *Callahan*, 2021 WL 783524, at *4-5.[4]

---

[4] *See also Gentry v. eBay*, 99 Cal. App. 4th 816, 831 n.7 (2002) (finding that eBay is an interactive computer service under Section 230(f)(2) where the plaintiff's operative complaint alleged that eBay "enables users to conduct sales transactions, as well as provide information (feedback) about other users of the service."); *Joseph v. Amazon.com*, 46 F. Supp. 3d 1095,1105-06 (W.D. Wash. 2014) (finding that Amazon is an interactive computer service where the plaintiff's operative complaint alleged that Amazon "operates a website that allows consumers to purchase items online, *i.e.,* to

Here, the Complaint's allegations place Doximity squarely within the definition of "interactive computer service." Compl., ¶¶ 7, 29-30. The Complaint alleges that Doximity offers a "healthcare professional network" through its "website" "where it advertises and sells … products and services to persons through the United States." *Id.*, ¶ 7. The Complaint goes on to allege that individuals can access Doximity's "website" through, among others, the internet. *Id.*, ¶¶ 62, 66.

These are precisely the types of allegations that have led courts at the pleading stage to find that LinkedIn, Facebook, Ancestry.com, eBay, Amazon and other platform providers are interactive computer services under Section 230(f)(2). There is nothing in the Complaint to justify a different conclusion, and Doximity has satisfied the first prong of this test.

### b.    *Prong 2: Plaintiff's Claims Seek to Treat Doximity as a Publisher*

In analyzing the second prong of this test—i.e., whether the Complaint seeks to treat Doximity as a publisher under a state law cause of action—"courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Barnes*, 570 F.3d 1102. In this regard, federal and state courts have broadly interpreted what it means to act as a publisher under Section 230(c)(1). *See*, *e.g.*, *Hassell*, 5 Cal. 5th at 536; *Barrett*, 40 Cal.4th at 61.

Courts have consistently found that a wide range of publishing activities are protected by Section 230(c)(1). In *Callahan*, for example, a court in this district in granting a motion to dismiss a claim under Section 3344 held that the complaint was impermissibly attempting to hold Ancestry.com liable as a publisher where it merely "[took] information and photos from the donated yearbooks and republish[ed] them on its website in an altered format." 2021 WL 783524, at *4-5.

Section 230(c)(1) immunity applies regardless of the form of the publishing decision, and it operates to bar "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Hassell v. Bird*, 5 Cal. 5th 222, 536 (2018) (quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *Fair Hous. Council v. Roommates.com, LLC*, 489 F.3d 921, 934-35

---

access Amazon's servers by placing orders and browsing its online store;" collecting cases).

(9th Cir. 2007) ("[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."); *Barnes*, 570 F.3d at 1102 (in applying Section 230, recognizing that "a publisher... decides whether to publish material submitted for publication;" claims targeting a defendant's "reviewing, editing, and deciding whether to publish or to withdraw from publication" content treat it as a publisher.). "[I]t is immaterial whether [a publishing] decision comes in the form of deciding what to publish in the first place or what to remove among the published material." *Barnes*, 570 F.3d at 1102, n.8 (citing *Batzel v. Smith*, 333 F.3d 1018, 1032 (9th Cir. 2003)).

Here, the Complaint's allegations make clear that it seeks to hold Doximity liable precisely because Doximity "published" content. The Complaint makes that allegation more than one dozen times. For example, it alleges that: "Defendant does this by publishing and disseminating hundreds of thousands of 'profile pages' on the Website;" "Defendant … published the relevant profile pages from California;" and "Doximity has published [pre-populated profiles] on the Website, using their name, identity, and personally identifying information." Compl., ¶¶ 24-25, 29, 92, 106.

The Complaint's claims all hinge on Doximity allegedly publishing Plaintiff's name and business information, and this establishes the second prong of the test—it seeks to treat Doximity as a publisher under a state law claim.

        c.        ***Prong 3: The Information At-Issue in the Complaint Is Provided by Another Information Content Provider***

Section 230(c)(1)'s grant of immunity "applies only if the interactive computer service provider is *not* also an 'information content provider.'" *Roommates.com, LLC*, 521 F.3d at 1162. An "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of the [offending content]." 47 U.S.C. § 230(f)(3).

Here, Doximity does *not* create the content at-issue. Indeed, Doximity's Form 10-K—on which the Complaint repeatedly relies—expressly describes the "pre-populated Doximity professional profile[s]" at-issue as "pre-populated Doximity professional profile[s], ***reflecting publicly and commercially available third-party data***, which members can further supplement, update, and refine." *See, e.g.*, Compl., ¶ 29 at n. 5; RJN, Ex. A at pp. 3-4 (emphasis added).

Doximity's role as alleged in the Complaint is thus to "publish" content that is created by third-parties, and made publicly and commercially available elsewhere. Compl., ¶ 29; RJN, Ex. A at pp. 3-4. That is analogous to what a court in this district found in *Callahan* was user-generated content and, as a matter of law, it cannot suffice to find that Doximity is an "information content provider." *See Callahan*, 2021 WL 783524, at *4-5 ("Instead of creating content, Ancestry — by taking information and photos from the donated yearbooks and republishing them on its website in an altered format — engaged in 'a publisher's traditional editorial functions [that] [] do not transform an individual into a content provider within the meaning of § 230.'"); *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014); *see also Prager Univ. v. Google*, 85 Cal. App. 5th 1022, 1034-35 (2022) ("arranging and displaying others' content to users . . . through such algorithms . . . is not enough to hold [a service provider] responsible as the 'develop[er]' or 'creat[or]' of that content"); *Kimzey v. Yelp!, Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) (publishing user reviews and aggregation of user ratings did not render Yelp an "information content provider".[5]

The Complaint notably alleges that Doximity "create[s]" the pre-populated profiles. Compl., ¶ 42. That changes nothing discussed above, particularly where such allegation is entirely conclusory and, moreover, seeks to contradict Doximity's Form 10-K that the Complaint itself relies on in several places. Compl., ¶¶ 29-30, 34-35, 37-40, 59 n. 5-12, 18; *Sprewell*, 266 F.3d at 988; *Steckman v. Hart Brewing, Inc.*, 143 F. 3d 1293, 1295-96 (9th Cir. 1998) ("not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *Van Hook v. Curry*, 2009 WL 773361, at *3 (N.D. Cal. Mar. 23, 2009) ("When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings.").

Doximity does not create the content, as set forth in its 10-K. Doximity has thus established the third prong to show entitlement to immunity under Section 230(c)(1).

//

//

---

[5] The third prong overlaps with the second prong. *In re Apple Inc. App Store Stimulated Casino-Style Game Litig.*, 625 F. Supp. 3d 971, 978 (N.D. Cal. 2022). "The question of whether a plaintiff seeks to treat an interactive computer service as a publisher or speaker of third-party information (the second *Barnes* element) interacts in obvious ways with the question of whether the information provided is the information of a third-party (the third *Barnes* element)." *Id.*

### 2. Section 230(e)(3) Preempts all Claims in the Complaint

With Doximity having established that Section 230(c)(1) applies to the Complaint's allegations, the analysis turns to whether its state law claims are preempted under Section 230(e)(3).

Section 230(e)(3) provides that, subject to exceptions not applicable here,[6] "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). A state law claim is inconsistent with Section 230 where it seeks to hold an interactive computer service liable for engaging in a traditional publishing activity protected by Section 230(c)(1). *Barnes*, 570 F.3d at 1102.

A plaintiff cannot escape preemption based on the title of a claim. Section 230 "is implicated not only by claims that explicitly point to" content created by others, "but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing" the content. *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017). "[W]hat matters is not the name of the cause of action," but "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02.

Here, it makes no difference that the Complaint brings its claims under a mix of common law claims and consumer protection statutes, e.g., Section 3344 and the UCL. Common law and statutory claims for misappropriation of likeness are inconsistent with Section 230's immunities. *Callahan*, 2021 WL 783524, at *4-5. Courts have also recognized that California consumer protection statutes can be subject to preemption under Section 230(c)(1) where the plaintiff's claim seeks to treat an interactive computer service as a publisher. *See, e.g., Prager Univ.*, 85 Cal. App. 5th at 1040-41 (applying Section 230(c)(1) to bar unfair competition claims under § 17200 where they sought "to regulate defendants' publishing conduct"); *Gentry*, 99 Cal. App. 4th at 830-34.

That is precisely the circumstance with the Complaint. It seeks to have the Court treat Doximity as a publisher, and that is dispositive on this issue. Section 230(e)(3)'s preemption

---

[6] Section 230 provides that its immunities will not apply to suits brought under federal criminal law, intellectual property law, any state law that is "consistent" with Section 230, certain privacy laws applicable to electronic communications, and federal and state laws relating to sex trafficking. 47 U.S.C. § 230(e)(1)-(5). None of those are applicable here.

provision applies with equal force to bar the Complaint's claims under the common law (First and Fourth Claims for Relief) and consumer protection statutes (Second and Third Claims for Relief).

## V.    CONCLUSION

For the reasons set forth above, Doximity respectfully requests that the Court grant this motion to dismiss the Complaint. Dismissal should be with prejudice particularly to the extent that the Court finds that the Complaint's claims are barred by Section 230.

Dated: April 10, 2026                           **MCDERMOTT WILL & SCHULTE LLP**


By:    */s/ J. Jonathan Hawk*
          J. Jonathan Hawk

Attorneys for Defendant DOXIMITY, INC.