UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELSEY THAYER, | Case No. 26-cv-01206-TLT |
| Plaintiff, | |
| v. | **ORDER DENYING MOTIONS TO DISMISS** |
| DOXIMITY, INC., | Re: Dkt. Nos. 13, 14 |
| Defendant. | |

California law protects its citizens from the exploitative use of their name, image and likeness.  Plaintiff Kelsey Thayer ("Plaintiff") invokes California legal authority to safeguard herself, and other medical professionals, from the unauthorized use of their persona for commercial purposes.  At a time when personal information about our neighbors' lives is increasingly accessibly, the lines between private and public or celebrity and non-celebrity are increasingly blurred.  Regardless, the law has long recognized that profiting from the identity and reputation built by others without due compensation is unfair.  Such conduct is what Plaintiff alleges in her Complaint.

Before the Court is Defendant Doximity, Inc.'s ("Defendant") motions to dismiss Plaintiff's Complaint.  ECF 13, 14. Having considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court **DENIES** Defendant's motion to dismiss.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed her Complaint on February 9, 2026, alleging four causes of action. *See* ECF 1, Complaint ("Compl."). Plaintiff brought claims for (1) violation of the California Right of Publicity Law ("CRPL"), Cal. Civ. Code § 3344(a) (Count 1), (2) violation of the common-law right of publicity in California (Count 2), (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. §§ 17200 (Count 3) and (4) unjust enrichment (Count 4).  Plaintiff

*United States District Court*
*Northern District of California*

seeks to represent a nationwide class to recover damages for claims brought under the CRPL, the UCL, and California's common law torts of misappropriation of identity and unjust enrichment. *Id*. at ¶¶ 78, 86–131.

Defendant filed two separate motions to dismiss on April 10, 2026. ECF 13, 14. Defendant first filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) alleging that Plaintiff lacks Article III standing to pursue her claims. *See generally* ECF 13. Subsequently, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See generally* ECF 14.

On April 28, 2026, the Court ordered Plaintiff to file one opposition to the pending motions with a page limit extension.  ECF 27.  Plaintiff timely filed a response on May 8, 2026. ECF 30.  On May 22, 2026, Defendant filed two separate replies in support of the two pending motions.  ECF 34, 35.

The Court held a hearing on Defendant motions on July 14, 2026.

### B.    Factual Background

Plaintiff is Kelsey Thayer, a resident of Novato, California, and a plastic surgery physician's assistant.  Compl. ¶¶ 8, 52.  Defendant is Doximity, Inc., a Delaware corporation that maintains its headquarters in San Francisco, CA.  *Id.* ¶ 7.

Defendant operates the website Doximity.com.  *Id.* ¶ 26.  Doximity.com is a community for healthcare professionals that functions like a "LinkedIn or Facebook for Doctors."  *Id.* ¶ 28. The website maintains a database of names and personal information for over 80% of doctors and 50% of practitioners and physician assistants within the United States.  *Id.* ¶¶ 20–21.  Profile pages for healthcare professionals contain personal information like their name, job title, address of work, and name of grad school. *Id.* ¶¶ 23–24, 29.  In some cases, profiles are generated and prepopulated without the healthcare professionals' request or affirmative consent. *Id.*; ECF 13 at 7. If a healthcare professional claims their prepopulated account, they can edit the information on their profile and gain access to services including a professional social network, a newsfeed, workflow tools, a telehealth platform, fax capabilities, and an e-signature tool.  Compl. ¶¶ 30, 36-38.

United States District Court
Northern District of California

United States District Court
Northern District of California

Doximity.com generates revenue by providing a "paid service to third parties, who, with a paid subscription, can use Doximity's platform to advertise and recruit individuals with *registered* accounts on that platform." ECF 38 at 2. Doximity's customers include pharmaceutical manufacturers, health systems, medical recruiting firms, and certain other healthcare companies. *Id.* In addition, Doximity.com offers "enterprise workflow solutions to health systems and hospitals to, among other things, utilize scheduling tools for their personnel." *Id.*

Plaintiff takes issue with the prepopulated profile Doximity created of her, as shown below.



The top of the page has Plaintiff's full name, job title, and a blurred-out profile picture of the *Mona Lisa.* The profile page also lists her prior education and her employer's address and phone number. Beyond Plaintiff's own personal information, the webpage includes two links to join the Doximity network. One reads, "Join to View Full Profile," and the other reads "Join Doximity" and details the tools registered users gain access to. In addition, the page lists several other users,

both registered and unregistered, with similar positions to Plaintiff.

Plaintiff alleges that Doximity deprived her of the commercial value in her name and the information displayed on Doximity.com.  Compl. ¶ 104.  Plaintiff also alleges that Defendant's unauthorized use of her name, identity, and personal information caused her to suffer mental anguish experienced mental upon learning of her unclaimed profile.  *Id.* ¶ 95.  Doximity claims that it does not sell healthcare professional's information, does not "tease" that information to encourage others to purchase paid subscriptions, and does not imply that Plaintiff endorses Doximity's platform.  ECF 34 at 5.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss – Rule 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss a claim based on subject matter jurisdiction, including a lack of standing.  *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).  "On a motion to dismiss for a lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor."  *Id.* (citing *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002)).  The party asserting federal subject matter jurisdiction bears the burden of establishing that it is present. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

"The constitutional minimum of standing" requires three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  First, the plaintiff must prove that "an injury-in-fact, *i.e.*, a concrete and particularized, actual or imminent invasion of a legally protected interest."  *Id.* at 555.  Second, there must be a "causal connection" between the injury and the conduct.  *Id.* at 560. The injury must be "traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court."  *Id.* (cleaned up).  Finally, the plaintiff must show that the injury "will likely be redressed by a favorable decision."  *Chandler*, 598 F.3d at 1122.

### B.    Motion to Dismiss – Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To overcome a motion to dismiss, a

United States District Court
Northern District of California

Plaintiffs' "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *Id*. at 558–59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

## III.　DISCUSSION

### A.　Plaintiff Has Article III Standing

#### i.　Pleading Standard for Alleging a Concrete Injury-in-Fact for Publicity Violations

Defendant argues that Plaintiff's Complaint fails to allege any injury-in-fact sufficient to confer Article III standing because Plaintiff merely alleges speculative economic loss and conclusory emotional harm. ECF 13 at 12. Plaintiff argues that her Complaint confers Article III standing because her claims, based on right of publicity violations, have been recognized as cognizable injuries at common law. ECF 30 at 9.

"In determining whether an injury under causes of action" such as "violation of California's right of publicity statute, Cal. Civ. Code § 3344; (2) appropriation of a name or likeness under California law . . . violation of California's Unfair Competition Law, Cal. Bus. &

Prof. Code § 17200 *et seq*" are "sufficiently concrete to confer Article III standing, the Supreme Court has instructed that courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 888 (N.D. Cal. 2022) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)).

"A plaintiff cannot simply assert statutory or common law actions that are supposedly 'injuries in themselves' to obtain standing." *Kisil v. Illuminate Educ., Inc.*, No. 23-4114, 2025 WL 2589000, at *1 (9th Cir. Sept. 8, 2025). Instead, a plaintiff must "demonstrate how the intangible harm from the statutory violation or tortious conduct is sufficiently closely related to a traditionally recognized harm." *Id*.

For the reasons discussed below, the Court finds that Plaintiff satisfies the requirements of Article III standing.

### a. Plaintiff's Alleged Injuries Are Sufficiently Concrete to Confer Article III Standing

Plaintiff argues that her injuries are concrete under *TransUnion* because Plaintiff's causes of action have close historical, common-law analogues. ECF 30 at 10. Defendant argues that Plaintiff failed to put forward specific facts to show injury that the alleged injuries actually resemble the type of harm historically recognized. ECF 34 at 2.

Courts engaged in this inquiry have acknowledged have recognized as cognizable injuries those resulting in physical harm, monetary harm, and certain "intangible" harms. *Id.* Those "intangible" harms include "disclosure of private information, and intrusion upon seclusion." *Kellman*, 599 F. Supp. at 889. "As Restatement of Torts makes clear, the common-law right to privacy was invaded by intrusion upon seclusion, appropriation of a name or likeness, unreasonable publicity, or false-light claims." *Id.* (citing *See* Restatement (Second) of Torts § 652A); *see also Gehringer v. Ancestry.com Operations Inc.,* No. 25-cv-05974, 2026 WL 734526, at *3 (N.D. Cal. Mar. 16, 2026) (citing the Restatement (Second) of Torts § 652C to affirm a plaintiff holds a right to "the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others"). The Ninth

Circuit and courts within the circuit are in accord.  *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Violations of the right to privacy have long been actionable at common law."). "[B]oth the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *Id.*; *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).  Moreover, while legislatures "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing," *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 796 (N.D. Cal. 2011) (citation omitted), where, as here, "a legislature had declared that an injury is legally redressable, courts afford due respect to that decision." *Kellman*, 599 F. Supp. 3d at 888 (citing *TransUnion*, 594 U.S. at 425).

Defendant acknowledges that some of the information disclosed of Plaintiff on its website includes her name, job title as "plastic surgery physician assistant," address of the medical establishment where he works, and the name of her graduate school.  ECF 14 at 10.  However, Defendant asserts that the pre-populated profile makes clear visitors of the website that she is not registered for the network.  *Id.*  Moreover, Defendant argues that because Doximity is not selling Plaintiff's (or any other non-registered user's) information, offering it in exchange for a paid subscription to its platform, nor implying Plaintiff's endorsement of its services, Plaintiff has not demonstrated a specific injury comparable to a harm recognized at common law.  ECF 34 at 7.  First, Plaintiff need not plead that Defendant falsely implied her endorsement of Defendant's services to allege a concrete injury.  *Kellman*, 599 F. Supp. 3d at 895 ("[A]n implication of *endorsement* is not the only alleged violation that is actionable under the relevant statutes; appropriation for commercial use more broadly can be too.") (emphasis in original).  Plaintiff alleges that "[s]ignificant commercial value exists in the aspects of Plaintiff's and the other Class members' names and identities that Defendant used and continues to use" for commercial purposes without her and other putative class members' consent.  Compl. ¶ 96; *see also id*. at ¶ 104 (alleging Defendant's misappropriations "injured Plaintiff and the Class members by depriving them of the commercial value associated with the use of their names and identities for advertising purposes."); *see also id*. at ¶¶ 62, 65, 102, 109, 118, 123 (similar).  Plaintiff further

United States District Court
Northern District of California

7

alleges that Defendant makes commercial use of those protected attributes and benefits monetarily from their unauthorized use without compensating Plaintiffs. *See, e.g., id*. at ¶¶ 48, 118, 119, 121, 123, 127. As discussed further below, these allegations are sufficient to plead an injury consistent with those traditionally recognized in the privacy context.

Accordingly, the Court finds that Plaintiff has sufficiently alleged an injury that resembles those traditionally recognized at common law.

### i.    Plaintiff Sufficiently Alleges an Economic Injury

Courts in this district are split on the pleading standard for economic loss related to violations of the right of publicity.  *Compare Callahan v. PeopleConnect*, No. 3:20-cv-09203-EWC, 2021 WL 5050079, at *14 (N.D. Cal. 2021) ("If a defendant uses a plaintiff's name and/or likeness to advertise, then it can reasonably be inferred that the name and/or likeness has some economic value, even if small."), *with Callahan v. Ancestry.com Inc.*, No. 20-cv-8437-LB, 2021 WL 783524, at *4-5 (N.D. Cal. Mar. 1, 2021) (finding a lack of injury in fact, in part, because plaintiffs "did not show that they had a commercial interest in their images that precluded the platform's use of them").

The Court acknowledges *Ancestry.com Inc.* but finds *PeopleConnect* more persuasive and better aligned with the spirit of California law.  The *Ancestry.com* court recognized that non-celebrities could recover, but limited misappropriation claims to narrow circumstances where Plaintiffs hold independent "commercial interest in their likenesses." *Ancestry.com Inc.*, 2021 WL 783524, at *5.   The court offered the example of models who, "while not celebrities . . . had a commercial interest in their likeness." *Id*.  However, this singular example does not shed much light on the types of people who might have an independent commercial interest in their likeness. Courts in this district have previously acknowledged that, "in a society dominated by reality television shows, YouTube, Twitter, and online social networking sites, the distinction between a 'celebrity' and a 'non-celebrity' seems to be an increasingly arbitrary one." *Fraley*, 830 F.Supp.2d at 808.  Since Doximity.com is a social networking platform, there is inherent value in every profile that builds out the network.  Thus, this Court finds following *Ancestry.com* and

requiring independent commercial interest in a potential plaintiffs' likeness would exclude other exploitative uses of everyday people's likenesses for commercial use.

California courts have understood § 3344 as not imposing a higher pleading standard on non-celebrities than celebrities. *Fraley* 830 F.Supp.2d at 807 ("The statutory text makes no mention of preexisting value, and in fact can be read to presume that a person whose name, photograph, or likeness is used by another for commercial purposes without their consent is 'injured as a result thereof.'"); *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 373 n.12 (2000) ("the statutory right of publicity exists for celebrity and non-celebrity plaintiff's alike"). This Court recognizes § 3344 as providing an opportunity to recover for non-celebrities whose likenesses do not have easily discernable economic value. Holding otherwise would preclude Plaintiffs from recovery because their likenesses did not have a demonstrated prior economic value. *See Fraley* 830 F.Supp.2d at 808 ("[P]revious non-celebrity plaintiffs have typically been models, entertainers, or other professionals who have cultivated some commercially exploitable value through their own endeavors. Nevertheless, the Court finds nothing requiring that a plaintiff's commercially exploitable value be a result of his own talents or efforts to state a claim for damages under § 3344.").

Furthermore, the Court embraces Ninth Circuit authority which holds that the appropriation of one's likeness "may itself create economic value in what was previously economically valueless." *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 825–27 n.11 (9th Cir. 1974). Here, Plaintiff may be a relatively unknown physician's assistant with no quickly discernible value to her likeness, but Doximity used her profile to build its vast network, which it advertises and generates revenue from. Viewed individually the financial value of her single profile may be negligible, but when viewed in the aggregate, with other class members, there is clear value in unregistered profiles like hers.

For the above reasons, the Court applies the authority from *PeopleConnect* and finds that Plaintiff has met her burden in pleading economic harm.

### ii.    The Court Defers Ruling on Plaintiff's Alleged Emotional Injury

Since Plaintiff has sufficiently pled economic harm, Plaintiff's Article III Standing does

United States District Court
Northern District of California

not depend on the sufficiency of her emotional harm claim.  However, the Court offers the following analysis regarding Plaintiff's alleged emotional injuries.

"[G]iven that a right of publicity claim concerns the 'anguish and helplessness individuals feel when their privacy is stripped away and their image published for commercial purposes without their consent,' it is '[t]he loss of agency and control over her image" that causes a plaintiff's harm." *Ambrozewicz v. 6Sense Insights, Inc.*, 804 F. Supp. 3d 1026, 1032 (N.D. Cal. 2025) (internal citation omitted).  To be sure, "conclusory assertion of 'hurt feelings'" are insufficient to establish mental anguish.  *Cohen v. Facebook, Inc.*, 798 F.Supp.2d 1090, 1097 (N.D. Cal. 2011). This court in *Ambrozewicz* articulated that "Plaintiffs must, at a minimum plead that they suffered mental anguish as a result of the alleged misappropriation, and a plausible supporting factual basis for any such assertion." *Ambrozewicz,* 804 F. Supp. 3d at 1032; *Cohen*, 798 F.Supp.2d at 1097 (same).  Plaintiffs in *Ambrozewicz* tied their mental anguish to their inability to control their identities.

> "Defendant's actions have created doubt and worry ... about [their] ability to control how others use" their identities to promote their products. Compl. ¶ 56. They further aver, as a matter of fact, that they do not want 6Sense to use their identities for commercial purposes. See, e.g., id. ¶ 53. These allegations suffice to demonstrate a factual basis for the harm of mental anguish: Plaintiffs do not want their information to be used commercially by 6Sense, but Defendant continues to do so, making them feel doubt and worry."

804 F. Supp. 3d at 1032. *Gehringer v. Ancestry.com Operations Inc.*, No. 25-CV-05974-AMO, 2026 WL 734526, at *3 (N.D. Cal. Mar. 16, 2026) (citing *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1005 (2008)) ("[T]he common law did not require a plaintiff to show loss of the economic value of his name.  Rather, California courts have recognized the tort of misappropriation can cause "injury to the feelings, that concerns one's own peace of mind, and that is mental and subjective.").

Here, the entirety of Plaintiff emotional harm injury includes the following:

> [Plaintiff] suffered mental anguish as a result of Defendant's unauthorized uses of her name, identity, and other personally identifying information in the manner alleged herein. Upon learning that her name, identity, and other personal details were being used by Defendant to sell its products and services on the open market for its

own financial gain, Plaintiff became worried, frustrated, and concerned, disturbing her peace of mind in a meaningful way—just as would occur to any reasonable person (including members of the Class) under the same or similar circumstances.

Compl. ¶ 95. Plaintiff states the conduct in controversy and how it made her feel, but where Plaintiff in *Ambrozewicz* explains that their mental anguish stemmed from their inability to control their identity, Plaintiff here asks the court to infer why Plaintiff was mentally harmed by discovering of her pre-populated profile. Plaintiff may have sufficient facts to support the Court finding an emotional injury; however, those facts are absent in the Complaint. Plaintiff asks the Court to infer the correlation between Plaintiff discovering her Doximity.com profile and the emotional harm she alleges. The Court cannot reasonably close the gap in logic without further explanation.[1]

### iii.    Plaintiff Satisfies the Traceability and Redressability Requirements for Article III Standing

Plaintiff argues that the alleged harm is clearly traceable to the single defendant's conduct and that said harms are redressable via a including actual damages, punitive damages, statutory damages, and the court's power to enjoin illegal conduct. ECF 30 at 23-24. Defendant counters that Plaintiff seeks statutory damages and injunctive relief but fails to explain how such relief would meaningfully alleviate Plaintiff's purported economic loss or emotional distress. ECF 13 at 12-13.

The Supreme Court has held that, in order for plaintiffs to sufficiently meet the traceability requirement, "there must be a causal connection between the injury and the conduct complained of," and "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, (1976)). The Supreme Court has held that it "must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

---

[1] Plaintiff's deadline to amend her complaint is September 18, 2026. Plaintiff is invited to revise her Complaint to close the gaps identified by the Court to set the foundation for her claim of emotional harm. The parties are encouraged to meet and confer to reach a stipulation regarding such an amendment.

11

*Lujan*, 504 U.S. at 561.

Here, Plaintiff satisfies the causation requirement by alleging that Defendant itself posted and profited from the posting of Plaintiff's pre-populated profile. *See, e.g., Kis*, 2024 WL 3924553 at *4 ("Kis alleges that Cognism used his name and likeness as part of its free trial advertising the platform, and that Cognism profited off having a database filled with such profiles. . . . The harm alleged is fairly traceable to Cognism."). Plaintiff has also demonstrated that Defendant's conduct, posting of the Plaintiff's profile page on its website, Doximity.com, are redressable by this Court because her monetary claims can be compensated. *See* Cal. Civ. Code § 3344(a). Moreover, this Court can enjoin Defendant from further posting Plaintiff's personal information on its website.

Accordingly, the Court finds that Plaintiff satisfies the elements of Article III standing.

### B.    Plaintiff's Complaint

#### i.    Section 230 Does not Bar Plaintiff's Claims

Defendant argues that because Plaintiff seeks to hold Doximity liable under state law as a publisher of third-party content, her claims are barred by Section 230(c)(1) of the Communications Decency Act. ECF 14 at 29. Plaintiff argues that she is not suing Defendant for information posted by a third-party user of Doximity.com, but for information created, designed, programed, and published by Defendant. ECF 30 at 43–44. Thus, Plaintiff argues, her claims are not barred by Section 230. *Id.*

Section 230 of the Communications Act of 1934, enacted by the Communications Decency Act, protects "apps and websites which receive content posted by third-party users (i.e., Facebook, Instagram, Snapchat, LinkedIn, etc.) from liability for any of the content posted on their services." *Est. of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1435 (2025). However, "this grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)

United States District Court
Northern District of California

Here, Plaintiff does not seek to treat Defendant as a publisher or speaker and the information was provided by Defendant, not a third party. "Defendant ignores the nature of Plaintiffs' allegations, which accuse Defendant not of publishing tortious content, but rather of creating and developing commercial content that violates their statutory right of publicity." *Fraley*, 830 F. Supp. 2d at 801.

Accordingly, the Court finds that Plaintiff's claims are not barred by Section 230.

### ii. Plaintiff States a Claim for Common Law Publicity Violation

"California has long recognized a common law right of privacy for protection of a person's name and likeness against appropriation by others for their advantage." *Kis*, 2024 WL 3924553, at *5 (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). To state a misappropriation of likeness, claim under the common law, a plaintiff must allege: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918 (1996); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017) (same). Defendant does not dispute the first or third element of this claim. Regarding the injury, as discussed above, the Court finds that Plaintiff has plead injury in the loss of control of the use of her personal information used for Defendant's commercial advantage and an injury for mental anguish. *See, e.g., PeopleConnect*, 2021 WL 5050079 at *15 ("Economic value may reasonably be inferred from PeopleConnect's use of the images to advertise, and this is sufficient to defeat a motion under Rule 12(b)(6)"). The Court addresses remaining disputed element below.

Regarding the purpose of Defendant's use of Plaintiff's likeness, Defendant argues that the use of pre-populated page of Plaintiff is incidental to Doximity.com's network of more than two million registered medical professionals. ECF 14 at 18. According to Defendant, Plaintiff's profile, which is one of hundreds of thousands of additional pre-populated profile pages for medical professionals who have not registered for the network, is "a drop in the ocean" among the total number of registered and unregistered profiles on Doximity.com. *Id.* at 18–19. Plaintiff, thus, Defendant argues, cannot claim anything more than incidental use of her likeness. *Id.*

United States District Court
Northern District of California

13

Plaintiff argues that, in the aggregate, the use of Plaintiff's and other putative class members' names and identities was instrumental to and continues to be instrumental to Defendant in obtaining users of its platform and revenue as a result.  ECF 30 at 33.

This incidental use defense to privacy torts is "widely recognized" by courts and the Ninth Circuit has "assumed" it exists under California law in the absence of dispute from the parties. *Kellman*, 599 F. Supp. 3d at 895; *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 & n.5 (9th Cir. 2015).  Factors considered in this analysis include: (1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work, and (4) the duration, prominence or repetition of the likeness relative to the rest of the publication.  *Kellman*, 599 F. Supp. 3d at 895; *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1081 (C.D. Cal. 2025).

Plaintiff argues that "[c]ourts regularly considers the aggregate value of the alleged misappropriations when assessing 'incidental use' defenses."  ECF 30 at 33.  The Court agrees that it may appropriately consider the collective impact of the use of Plaintiff's and similarly situated putative class members' profiles when assessing Defendant's incidental use defense. *Spindler v. Seamless Contacts, Inc.*, No. 4:22-CV-00787, 2022 WL 16985678, at *5 (N.D. Cal. Oct. 24, 2022) ("Even if, as Plaintiff alleges, he is only one of 'millions of individuals' included in Defendant's database, in aggregate that is not incidental."); *see also Kellman*, 599 F. Supp. 3d at 895 (examining Defendant's "business model" rather than the impact of any individual profile to analyze the incidental use defense); *LaRock v. ZoomInfo Techs. LLC*, No. C24-5745, 2025 WL 1345264, at *3 (W.D. Wash. May 8, 2025), *motion to certify appeal denied*, No. 24-cv-5745, 2025 WL 2443186 (W.D. Wash. Aug. 25, 2025) ("ZoomInfo counters that LaRock's name is just one of millions, and therefore incidental by definition. . . The Court is not persuaded.").  In the aggregate, the "hundreds of thousands" of unregistered, non-consenting individuals whose likeness is being used in pre-populated profiles artificially inflates the significance of Doximity.com's network. Plaintiff plausibly alleges that Defendant's conduct, including the presence of various links surrounding Plaintiff's (and other's) profiles, is intended to secure new users of Defendant's

14

platform. Compl. ¶ 49 ("Join to View Full Profile", "Gain access to free telehealth tools, such as our 'call shielding' and one-way patient texting."). As discussed above, Defendant operates a two-sided online social network, one side of which is free to use for consumers (à la Facebook, Instagram, LinkedIn, etc.), *Id.* ¶¶ 27 – 30, the other side of which is pay-to-play, with advertisers and recruiters paying Defendant for access to the social network's users. *Id.* at ¶¶ 31 – 41. The larger the network, the more valuable the network. The more valuable the network, the more medical professionals will register to use the platform. The more medical professionals registered to use the platform, the more advertisers and recruiters will pay for access to Defendant's website. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1195 (N.D. Cal. 2014) ("LinkedIn's use of users' names to promote LinkedIn's services is undertaken with the intent to grow LinkedIn's user base and ultimately result in commercial advantage to LinkedIn.").

Accordingly, the Court finds that Plaintiff has sufficiently pled a claim for violation of the common law right of publicity.

### iii.    Plaintiff States a Claim for Statutory

Plaintiff argues that she states a claim under California's statutory right of publicity because she sufficiently pleads that Defendant used Plaintiff's name and likeness for a commercial purpose without her consent. ECF 30 at 32–38. Defendant argues that Plaintiff fails to show a direct connection between Defendant's use of Plaintiff's information and Doximity's purported commercial purpose. ECF 35 at 13.

Cal. Civ. Code § 3344 prohibits the nonconsensual use of another's name, voice, signature, photograph, or likeness for advertising, selling, or soliciting purposes, and creates a cause of action for persons injured by such actions. Cal. Civ. Code § 3344.[2] A claim under the CRPL has two elements more than the common law counterpart. *Judge v. Academia, Inc.*, No. 25-cv-05857, 2026 WL 1256876, at *5 (N.D. Cal. May 7, 2026) ("California statutory right of publicity claim

---

[2] *See generally* Cal. Civ. Code § 3344(a) (prohibiting "us[ing] another's [persona] in any manner, on or in products ... or for purposes of advertising or selling" without consent); 765 ILCS 1075/5 and 1075/30 (defining the prohibited "commercial purpose" as "public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product" or "(ii) for purposes of advertising or promoting products" without written consent);

15

necessarily satisfies the elements for a common-law appropriation of name or likeness claim."). The two additional elements are: "(5) knowing use of the plaintiff's name, photograph or likeness for purposes of advertising or solicitation of purchases, and (6) a direct connection . . . between the use and the commercial purpose." *Nolen v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2023 WL 4303645, at *2 (N.D. Cal. June 30, 2023); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 (9th Cir. 2017).

The parties do not appear to dispute that Defendant knowingly used Plaintiff's name and likeness. The information disclosed about Plaintiff includes her name, job title, address of the medical establishment where he works, and the name of her graduate school.  However, Defendant disputes that the use of this information served a commercial purpose.  Defendant says that the pre-populated profile makes clear to people that she is not registered for the network, so there is no suggestion that Plaintiff endorses or promotes the service.  ECF 14 at 10.  However, Plaintiffs description of the two-sided platform business model employed by Defendant directly connects use of Plaintiff's personal information to a commercial advantage.  Again, the larger the network, the more money Defendant makes.

Accordingly, the Court finds that Plaintiff has plead the additional elements required to state a claim for violation of Cal. Civ. Code § 3344.

### iv.    Plaintiff States a Claim Under the UCL

Plaintiff argues that she plausibly alleges each element of a UCL claim because she alleges unfair, unlawful, and fraudulent conduct from Defendant.  ECF 30 at 40.  Defendant argues that the Complaint fails to allege any UCL claim because it fails to allege the unlawful or unfair prong and fails to allege statutory standing.  ECF 35 at 17–18.

"[U]nder the unlawful prong, the UCL 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" *Tseng v. PeopleConnect, Inc.*, 665 F. Supp. 3d 1136, 1148 (N.D. Cal. 2023) (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1196 (2013).

Here, Plaintiff's UCL "unlawfulness claim is derivative of the § 3344 claim." *See, e.g., Fraley*, 830 F. Supp. 2d at 812 ("By properly alleging a § 3344 violation, Plaintiffs have also

alleged a UCL violation under the 'unlawful' prong."); *PeopleConnect*, 2021 WL 5050079 at *18 ("The unlawfulness claim is derivative of the § 3344 claim."). Because, as discussed above, Plaintiff has plausibly alleged a violation of section 3344, Plaintiff satisfies the "unlawful" prong of her UCL claim.

Plaintiff satisfies the unfair prong because she alleges that "[b]ut for its violation of law, Defendant would have either paid Plaintiff and the Class members for consent to use their names, identities, and other personally identifying information, or ceased its commercial use of those attributes." Compl. ¶ 123; *see, e.g., Fraley*, 830 F. Supp. 2d 785 at 813 (N.D. Cal. 2011) ("Plaintiffs have stated a claim for unfair conduct under the UCL."); *Kellman*, 599 F. Supp. 3d at 896 ("plaintiffs have adequately alleged a violation of the unfair prong."); *Spindler*, 2022 WL 16985678 at *6 (similar)

Accordingly, the Court finds that Plaintiff has stated a claim under the UCL.

### v.    Plaintiff States a Claim for Unjust Enrichment

Plaintiff argues that she states a claim for unjust enrichment because Plaintiff alleges that "defendant received and unjustly retained a benefit at the plaintiff's expense." ECF 30 at 40 (citing ESG Cap. Partners, LP, 828 F.3d at 1038). Defendant argues that Plaintiff fails to demonstrate that Plaintiff conferred an economic benefit on Doximity. ECF 35 at 15.

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023).

As discussed above, Plaintiff has plausibly alleged that the use of her likeness conferred an economic benefit on Defendant and that but for the violation of law, Defendant would have compensated Plaintiff and the putative class members, or ceased its commercial use of their likenesses.

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motions to dismiss.

Plaintiff's deadline to amend her Complaint regarding her alleged emotional harm is **September 18, 2026**. *See* ECF 32.

17

A Further Case Management Conference is set for November 12, 2026, at 2:00 PM.  A Joint Case Management Statement is due by no later than November 5, 2026.

This Order resolves ECF 13 and 14.

IT IS SO ORDERED.

Dated: August 3, 2026

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

18